TEXACO, INC. *v.* THOMAS J. GOLART ET AL.
(13093)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued December 8, 1987—decision released March 8, 1988

*Thomas B. Wilson,* with whom was *James J. Courtney,* for the appellants (defendants).

*Leeland J. Cole-Chu,* for the appellee (plaintiff).

GLASS, J. The plaintiff, Texaco, Inc., brought an action against the defendants, Thomas J. Golart and Marion D. Golart, seeking specific performance of an option to purchase a parcel of real property located in Groton. The defendants asserted eight special defenses,[1] and by their amended counterclaim sought damages, including punitive damages, attorney's and expert fees and equitable relief. The trial court, *Schaller, J.,* found for the plaintiff and ordered specific performance under the fixed price purchase option of the lease. The defendants now appeal, claiming that the trial court erred in: (1) removing the case from the jury docket; (2) refusing to admit into evidence a 1960 lease between the plaintiff and a third party; (3) finding that there was no fraud by the plaintiff; (4) concluding that the lease was not unconscionable; and (5) ordering specific performance of the option to purchase. At oral argument, the plaintiff reasserted a motion for sanctions for a frivolous appeal, pursuant to Practice Book § 4184[2] and General Statutes § 51-84,[3] requesting that the defendants' appeal be adjudged frivolous and that the plaintiff therefore be awarded attorney's fees incurred in

---

[1] The eight special defenses asserted by the defendants are: (1) untimely exercise of the option in violation of General Statutes § 47-33a; (2) violation of the rule against perpetuities; (3) unreasonable restraint on alienation; (4) fraud; (5) unfairness and unconscionability; (6) violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act; (7) failure to comply with the federal Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq.; and (8) the lease was no longer in effect due to alleged breaches of it by the plaintiff. Subsequent to trial the defendants withdrew the first and seventh special defenses. In their appellate brief the defendants also abandoned the second, third, sixth and eighth special defenses.

[2] See text, infra, at pp. 463–64.

[3] "[General Statutes] Sec. 51-84. ATTORNEYS SUBJECT TO RULES. (a) Attorneys admitted by the superior court shall be attorneys of all courts and shall be subject to the rules and orders of the courts before which they act.

"(b) Any such court may fine an attorney for transgressing its rules and orders an amount not exceeding one hundred dollars for any offense, and may suspend or displace an attorney for just cause."

defending the appeal. We conclude that the defendants' appeal was not frivolous but find no error.

The trial court found the following facts. The defendants are the owners of property located at the southwest corner of state route 12 and Crystal Lake Road in Groton. The defendant Thomas Golart[4] has operated a retail gasoline service station on the property since late 1951, when he entered into a lease agreement with the plaintiff, and built the service station pursuant to the lease agreement. The defendant first considered purchasing this property only after he had been approached by the plaintiff which was interested in developing the property. The plaintiff and the defendant had previously conducted business together. In 1950 they had entered into a lease agreement for a service station located on Coleman Street in New London. That lease included a $40,000 fixed price purchase option which could be exercised by the plaintiff.

The property in question was subject to a number of lease agreements between the plaintiff and the defendant. The first lease was signed in 1951, and included an option to purchase the property, in favor of the plaintiff, for $40,000. During the negotiations for this lease, the defendant expressed concern about the option clause to the plaintiff's representative, Howard Clancy. Clancy indicated that the option clause had to be accepted, or there would be no agreement. He also indicated that the defendant did not need to worry about the clause unless the plaintiff exercised it. In 1952, another lease agreement was executed between the parties to correct an error in the original lease.

[4] Subsequent to the signing of the 1961 lease, the defendant Thomas J. Golart conveyed a one half interest in the property to the defendant Marion D. Golart. Thomas Golart has acted on behalf of Marion Golart in all respects relating to this action. Hereinafter, reference to "the defendant" will refer to Thomas Golart because the negotiations surrounding the execution of the 1961 lease occurred prior to the conveyance to Marion Golart.

Prior to the expiration of the 1952 lease, a new lease was executed in 1961, which also contained the option clause. The purchase price was increased to $55,000. During the negotiations for the 1961 lease, the defendant again expressed concern about the option clause, and asked Clancy to delete it from the lease. The defendant sought the advice of an attorney before signing the lease, and knew from his prior negotiations with the plaintiff that the option would not be deleted. He was aware that the lease would not be approved by the plaintiff's central offices without the option clause. The defendant signed the 1961 lease, and later the fixed price purchase option clause was modified in writing to bar its exercise until after the ninth year of the lease's operation. The defendant initialed the document that modified the 1961 lease.

I

The defendants' first claim is that the trial court erred in removing the case from the jury docket. Specifically, the defendants argue that: (1) the ruling that the defendants were not entitled to a jury trial violated the law of the case; and (2) they were entitled to a jury trial as the matter was essentially legal as opposed to equitable. We disagree.

The defendants argue that the law of this case was established in a prior ruling by the trial court, *Conway, J.,* denying the plaintiff's motion to strike the case from the jury docket. Judge Conway indicated that the decision whether to strike the case from the jury docket "[fell] within the discretion of the court," because the case was "essentially equitable in nature." When the case was called for trial, the trial court, *Vasington, J.,* granted the plaintiff's motion for trial by the court. Subsequently, the trial court, *Schaller, J.,* tried the case.

We have stated that " '[a] judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had made the original decision.' *Santoro* v. *Kleinberger,* 115 Conn. 631, 638, 163 A. 107 (1932)." *Breen* v. *Phelps,* 186 Conn. 86, 98, 439 A.2d 1066 (1982). Thus, we have held that " '[f]rom the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling. 18 Wright, Miller & Cooper, [Federal Practice and Procedure: Jurisdiction] § 4478; *Parmelee Transportation Co.* v. *Keeshin,* 292 F.2d 794, 797 (7th Cir.), cert. denied, 368 U.S. 944, 82 S. Ct. 376, 7 L. Ed. 2d 340 (1961). In an appeal to this court where views of the law expressed by a judge at one stage of the proceedings differ from those of another at a different stage, "the important question is not whether there was a difference but which view was right." *Dawson* v. *Orange,* 78 Conn. 96, 129, 61 A. 101 (1905).' *Breen* v. *Phelps,* supra, 100. See also *Schwarzchild* v. *Martin,* 191 Conn. 316, 325, 464 A.2d 774 (1983)." *Barnes* v. *Schlein,* 192 Conn. 732, 734, 473 A.2d 1221 (1984); see also *Rosenblit* v. *Danaher,* 206 Conn. 125, 537 A.2d 145 (1988); *Mac's Car City, Inc.* v. *American National Bank,* 205 Conn. 255, 532 A.2d 1302 (1987).

Therefore, our inquiry is directed to whether it was erroneous to deny a jury trial. It is well settled that the right to a jury trial under article first, § 19, of the Connecticut constitution, as amended, does not include a right to a jury trial in an equitable action. *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 76, 523 A.2d 486 (1987); *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 44–45, 495 A.2d 1034 (1985); *Franchi* v. *Farmholme, Inc.* 191 Conn. 201, 209–11, 464 A.2d 35 (1983). We have stated

that "[w]hen legal and equitable issues are combined in a single action, whether the right to a jury trial attaches depends upon the relative importance of the two types of claims. 'Where incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers. *Doris* v. *McFarland,* 113 Conn., 594, 608, 156 Atl. 52 [1931].' " *United States Trust Co.* v. *Bohart,* supra, 45. To determine whether the action is essentially legal or essentially equitable, we must examine the pleadings in their entirety.

The plaintiff's revised complaint sought specific performance of the fixed price purchase option. Specific performance is an equitable remedy. *Dick* v. *Dick,* 167 Conn. 210, 221–22, 335 A.2d 110 (1974). The defendants' amended counterclaim essentially sought to invalidate the option clause of the contract between the plaintiff and the defendant by showing fraud. In this factual scenario, fraud in the inducement is an equitable defense.[5] *Yale Literary Magazine* v. *Yale University,* 4 Conn. App. 592, 607, 496 A.2d 201 (1985); 27 Am. Jur. 2d, Equity § 20. The defendants also claimed damages, including attorney's fees, exemplary damages, punitive damages and court costs. Despite these claims, the essence of the defendants' counterclaim is that the plaintiff fraudulently induced the defendant

---

[5] The determination of whether a defense of fraudulent inducement is equitable or legal depends on whether there is an adequate remedy at law. See 27 Am. Jur. 2d, Equity § 20; 37 Am. Jur. 2d, Fraud and Deceit §§ 324, 326. The relief sought by the defendants in their counterclaim was a decree declaring title in the defendant, injunctive relief, an order directing the plaintiff's removal from the property with back rent, and various damages. We have stated that "fraud in the inducement of a contract ordinarily renders the contract merely voidable at the option of the defrauded party, who also has the choice of affirming the contract and suing for damages. If he pursues the latter alternative, the contract remains in force. . . ." *A. Sangivanni & Sons* v. *F. M. Floryan & Co.,* 158 Conn. 467, 472, 262 A.2d 159 (1969). By his special defense of fraudulent inducement the defendant has sought to rescind the contract, and his remedy is equitable.

to enter into the lease with the option clause. "[T]he mere claim of damages does not make the action essentially one at law." *Dick* v. *Dick,* supra, 222. The trial court did not err in removing this case from the jury docket despite the existence of these legal issues, as they were ancillary to the main issues in the counterclaim.

## II

The defendants' second claim is that the trial court erred in excluding evidence of a lease between the plaintiff and a third party. The defendants, however, did not except to the trial court's ruling that the lease was irrelevant; therefore, this claim was not " 'distinctly raised at trial' "; *Kevin Roche-John Dinkeloo & Associates* v. *New Haven,* 205 Conn. 741, 750, 535 A.2d 1287 (1988); *Holbrook* v. *Casazza,* 204 Conn. 336, 354, 528 A.2d 774 (1987); *State* v. *Rogers,* 199 Conn. 453, 508 A.2d 11 (1986); and we need not address it further.

We note, however, that at oral argument, the defendants argued that although the talismanic word "exception" was not used, the arguments and objections raised by the defendants constituted the "functional equivalent of an exception." Under Practice Book § 4185,[6] it is within our discretion to entertain an issue that was not properly preserved below. Although there have been some instances where we have exercised our discretion and considered such issues as plain error, review of these cases indicates that they commonly implicate a constitutional right or an important, general interest. See, e.g., *Cahill* v. *Board of Education,* 187 Conn. 94, 99, 444 A.2d 907 (1982), and *Kavanewsky* v. *Zon-*

---

[6] Practice Book § 4185 provides in relevant part: "ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interest of justice notice plain error not brought to the attention of the trial court."

*ing Board of Appeals,* 160 Conn. 397, 401, 279 A.2d 567 (1971) (implicating public welfare); *Cameron* v. *Cameron,* 187 Conn. 163, 168, 444 A.2d 915 (1982) (implicating judicial integrity). The facts in this case, however, do not warrant such an exercise of our discretion. Accordingly, we need not address the issue of the relevancy of the third party lease.

This conclusion, in addition, forecloses the defendants' third claim of error. At oral argument the defendants acknowledged that the trial court's factual finding that there was no fraud by the plaintiff cannot be challenged in this proceeding. Their claim, however, is that if the third party lease had been admitted into evidence, they would have prevailed on the issue of fraud in the trial court. Because the defendants did not properly preserve the issue of the relevancy of the third party lease, the claim regarding fraud is without substance.

### III

The defendants' next claim is that the trial court erred in finding that the lease between the parties was not unconscionable. This claim is closely linked with the defendants' final claim that the trial court erred in ordering specific performance of the fixed price purchase option in the lease. We find that the lease was not unconscionable and that specific performance was an appropriate remedy.

At the outset, we note that " '[t]he question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case.' *Iamartino* v. *Avallone,* 2 Conn. App. 119, 125, 477 A.2d 124 (1984); see *Hamm* v. *Taylor,* 180 Conn. 491, 493, 429 A.2d 946 (1980)." *Fairfield Lease Corporation* v. *Romano's Auto Service,* 4 Conn. App. 495, 498, 495 A.2d 286 (1985). Thus, our review on appeal is "unlimited by the 'clearly erroneous' standard." *Iamartino* v. *Avallone,* supra. Previously, we have used the stan-

dards set forth in the Uniform Commercial Code as a useful guide in examining a claim of unconscionability. See *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 225, 445 A.2d 857 (1983); *Hamm* v. *Taylor,* supra, 495. "As Official Comment 1 to § 2-302 of the Uniform Commercial Code suggests, '[t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.' " *Hamm* v. *Taylor,* supra, 495–96.

Under this test, the lease was not unconscionable. Review of the record reveals the following facts that are relevant to the issue of unconscionability: (1) the defendant was an experienced business person who was reasonably knowledgeable regarding the business of owning, operating, developing and maintaining service station properties; (2) the defendant had bargaining power with the plaintiff; (3) the defendant understood the terms of the lease; (4) the defendant had a meaningful choice regarding the execution of the 1961 lease; (5) there was no fraud with regard to the 1961 lease; (6) the plaintiff did not coerce or threaten the defendant regarding the 1961 lease; (7) the $55,000 fixed price option price was fair and reasonable in 1961 and in 1962, when the lease took effect; and (8) the 1961 lease was not unreasonably favorable to the plaintiff, either standing alone or in the context of the 1952 lease it superseded.

From our conclusion that the lease was not unconscionable, it follows that specific performance was an appropriate remedy. We have stated that "[a]s a general rule, equity, in deciding whether to grant specific performance in enforcing a contract, will consider the fairness of an agreement in accordance with the circumstances as they existed at the time of the execution

of the contract even though the property contracted to be sold becomes considerably more valuable at the time performance is due. . . . Specific performance of a contract will not be refused because there has been an increase in the value of the property contracted for between the date of the contract and the time when execution is demanded where . . . the contract at the time it was made was a reasonable and fair one. *Willard* v. *Tayloe,* 75 U.S. (8 Wall.) 557, 570–71, 19 L. Ed. 501 [1869]." *Robert Lawrence Associates* v. *Del Vecchio,* 178 Conn. 1, 19, 420 A.2d 1142 (1979). It was within the trial court's equitable discretion to order specific performance.

## IV

Finally, we consider the plaintiff's renewed motion for sanctions for a frivolous appeal, and its request for attorney's fees incurred in defending the appeal. Deciding the motion as a matter of first impression, we find that the defendants' appeal was not frivolous.

Practice Book § 4184 provides that "the presentation to the court of a frivolous appeal or frivolous issues and defenses on appeal . . . will subject an offender, at the discretion of the court, to appropriate discipline, including the imposition of a fine pursuant to General Statutes sec. 51-84, and costs and payment of expenses including attorney's fees to the opposing party." As this section does not set forth a standard for determining whether an appeal is frivolous we find it necessary to fashion one ourselves. With this in mind, we look to Rule 3.1 of the Rules of Professional Conduct and comments thereto for guidance.[7] The definition of a

---

[7] "[Rules of Professional Conduct] Rule 3.1 MERITORIOUS CLAIMS AND CONTENTIONS

"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may

frivolous appeal is set forth in the comment to Rule 3.1, wherein it is stated that "[t]he action is frivolous . . . if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law."

We hereby adopt this test, and further hold that the burden of proof lies on the moving party to establish the frivolity of the appeal. On the present record, we find that the plaintiff has not met that burden of proof. As to the first prong, the plaintiff has not established facts tending to show that the defendants brought this appeal for the purpose of harassing or maliciously injuring the plaintiff. As to the second prong, we have concluded that the defendants' arguments on appeal did have some merit, even though they did not warrant a reversal.

We find no error and also deny the plaintiff's motion for sanctions for a frivolous appeal.

In this opinion the other justices concurred.

nevertheless so defend the proceeding as to require that every element of the case be established.

"COMMENT:

"The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the propor scope of advocacy, account must be taken of the law's ambiguities and potential for change.

"The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law."