[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
This is a foreclosure action instituted by The Bank of New Haven ("the bank"), against the defendants, Jennith Liner and Sheldon Liner. The bank filed an amended complaint on May 9, 1991. The bank alleges that Jennith Liner signed a note dated June 12, 1986 for $170,000, which is secured by a mortgage deed dated the same day. The mortgage was subsequently assigned to the present plaintiff, Virtue Realty, Ltd. On October 27, 1991, the court, Flynn, J., granted the motion for substitution of Virtue Realty as party plaintiff. The bank alleges further that Jennith Liner has failed to pay the principal balance which became due on June 12, 1988, that she has failed to pay the installment of interest which became due on April 15, 1990 and on each month thereafter, and that said debt is now wholly due and payable. The bank alleges that it is now the owner and holder of the subject note and mortgage. The bank alleges that there is now due and unpaid $170,000 plus interest, insurance premiums, taxes, late charges, penalty interest, advances and expenses.
On April 14, 1993, the defendants filed substitute special defenses and a five count substitute counterclaim. The first special defense alleges fraud; the second special defense claims that the interest rates were excessive and unconscionable; the third special defense also claims fraud; and the fourth special defense, entitled "Sixth Special Defense," claims that the plaintiff intentionally overcharged and gouged the defendants with regard to the interest rate. CT Page 6687
Count one of the counterclaim alleges fraud; count two alleges breach of contract; count three alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; count four alleges a violation of the Truth-in-Lending Act, 15 U.S.C. § 1635 and 1640(a); and the fifth count, entitled "Count Seven," alleges a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. and The National Bank Act, 12 U.S.C.A. §§ 85 and 86.
On February 23, 1994, Virtue Realty filed a motion for summary judgment as to the complaint on the issues of liability and amount of debt, and on the defendants' counterclaims. Along with the motion, Virtue Realty filed a memorandum of law, copies of the term note, the mortgage deed, a payment schedule, the affidavit of Jennith and Sheldon Liner, a personal statement of Jennith and Sheldon Liner, a promissory note, a schedule of interest rates, a copy of an open ended mortgage, an assignment of mortgage, a typed note, the affidavit of Brett Silvers, the affidavit of Robert P. Hinkle, copies of decisions, and deposition testimony of Jennith Liner. Virtue Realty claims that no genuine issue of material fact exists as to whether Jennith Liner is liable under the note. In the alternative, Virtue Realty asks this court to bifurcate the counterclaims from the main action.
On March 25, 1994, the defendants filed an objection to Virtue Realty's motion for summary judgment along with a memorandum of law dated March 25, 1994, the affidavit of Sheldon Liner, the affidavit of Jennith Liner, and a copy of a Stipulation and Voluntary Withdrawal of Action dated August 4, 1992. The defendants claim that genuine questions of material fact exist as to the validity of the underlying note.
The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Scinto v.Stamm, 224 Conn. 524, 530, 620 A.2d 99 (1993). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact, a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citations omitted.) Id., 524. CT Page 6688
I. The Complaint
The bank's amended complaint alleges that by term note dated June 12, 1986, Jennith Liner promised to pay to the order of The Bank of New Haven $170,000, together with interest. The bank alleges that on the same date, Jennith Liner mortgaged property located at 435 Sheldon Court, Orange, Connecticut, to secure said note. On November 19, 1992, the defendants filed a revised answer in which they denied certain allegations contained in the bank's amended complaint, insofar as the amended complaint alleges that the defendant Jennith Liner voluntarily, knowingly, and intelligently entered into the transaction.
Virtue Realty argues in support of its motion for summary judgment that Jennith Liner admits that she owes the bank $170,000 and that she signed the note as her free act and deed. However, the only evidence that Virtue Realty offers as to Jennith Liner's admissions is her deposition testimony. "Copies of uncertified and unauthenticated deposition testimony may not be used in deciding a motion for summary judgment." Balderston v. Shoals Construction,Inc., 9 Conn. L. Rptr. 343 (July 1, 1993, Lewis, J.). "A response to a question propounded in a deposition is not a judicial admission." Esposito v. Wethered, 4 Conn. App. 641, 496 A.2d 222
1985). The defendant Jennith Liner's deposition testimony is insufficient to support Virtue Realty's motion for summary judgment on its complaint.
The defendants argue that they have alleged, by way of special defenses, that the bank charged unconscionable rates of interest making the underlying note void as against public policy. The defendants argue further that each and every special defense attacks the enforceability of the underlying note.
Virtue Realty argues that even though the defendants have filed special defenses, the raising of special defenses by the defendants does not preclude summary judgment for the plaintiff on the complaint. See Centerbank v. Silvermine Land Investment Corp.,8 CSCR 126 (December 16, 1992, Lewis, J.). In Centerbank v.Silvermine Land Investment Corp., supra, the defendant filed seven special defenses to the plaintiff's foreclosure complaint. The court held that the fact that the defendants had filed special defenses did not preclude the granting of a summary judgment on the complaint. Id. The court granted summary judgment in favor of the plaintiff because the defendants failed to refute the affidavits submitted by the plaintiff. Id. Although the defendants have filed CT Page 6689 special defenses, Virtue Realty is not precluded from moving for summary judgment.
Virtue Realty, however, fails to submit evidence that shows the absence of a genuine issue of material fact as to the validity of the note. The affidavits submitted with Virtue Realty's motion fail to show the absence of a genuine issue of material fact as to whether the underlying note and mortgage are valid. The affidavits of Brett Silvers and Robert P. Hinkle merely discuss common loan practices of the bank and the amount of the loan outstanding.
Taking into account all the pleadings and affidavits there exists a genuine issue of fact as to the validity of the note. Therefore, Virtue Realty's motion for summary judgment on its complaint is denied.
II. The Counterclaim
A. Count One
In count one of their counterclaim, the defendants allege fraud in that The Bank of New Haven represented to the defendants that the loan would have a variable interest rate, while hiding facts regarding future exorbitant and unconscionable interest rate charges. The defendants allege further that these representations were intentionally made to induce the defendants into the transaction, and as a result they suffered financial loss. In support of its motion for summary judgment, Virtue Realty argues that since this is not a consumer loan, pursuant to General Statutes § 49-6d, the plaintiff was not required to give notice. Virtue Realty argues further that any failure to send notices to the defendants of adjustments to the rate of interest could not have induced the defendants to enter into the transaction, because any such adjustments occurred after the closing of the loan. Virtue Realty also argues that there exists no issue of fact as to whether the loan was a commercial one.
The defendants argue that they were not advised as to how the bank calculated its prime rate, nor were they advised as to the ramifications of entering into a commercial loan. The defendants argue that questions of fact exist as to whether this was a commercial loan; whether the bank advised defendants as to how the interest rate was calculated; whether the defendants relied upon the bank's representation, to their detriment; that the bank would charge a rate of interest different than what they were in fact CT Page 6690 charged.
"It is. . .well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. . . ." United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 376, 260 A.2d 596 (1969). Whether the defendants relied on the misrepresentations of the bank presents a question of fact. Paull v. Coughlin, 39 Conn. Sup. 467,568, 466 A.2d 347 (1983). "Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact." (Internal quotations marks omitted.) Miller v. Appleby, 183 Conn. 51, 54-55,438 A.2d 811 (1981); see Maturo v. Gerard, 196 Conn. 584, 587,494 A.2d 1199 (1985).
In the present case, the defendants state in their affidavits that at no time did any representative of the bank explain to them the method or means of calculating the interest rate charged on the note, or whether the transaction was a commercial or consumer loan. While affidavits of the bank's officers state the normal practice of the bank with regard to interest rates charged on commercial loans, the affidavits fail to show the absence of any genuine issue of material fact as to whether the defendants were advised as to how the interest rate was to be calculated. There exist questions of fact as to whether there was fraud. Virtue Realty's motion for summary judgment as to count one of the defendants' counterclaim is denied.
B. Count Two
Count two of the defendants' counterclaim alleges that the bank breached its contract with the defendants by unconscionably gouging and charging exorbitant interest rates under a method of raising rates that was not fully disclosed to them at the closing. Virtue Realty argues that unconscionability is a matter of law to be decided by this court. Virtue Realty argues further that the bank charged the defendants two percent over the Bank of New Haven Prime Rate since the inception of the loan. Virtue Realty also argues that the defendants were not the bank's most responsible and substantial customers and that therefore it was not unconscionable for the bank to charge them slightly more than its prime rate.
The defendants argue in their memorandum that this court ruled on November 9, 1993 that the defendants' counterclaims alleging CT Page 6691 fraud, breach of contract, violations of the Truth in Lending Act, RESPA and RICO raise genuine issues of material fact. However, the November 9, 1993 decision of this court, Curran, J., does not deny motion for summary judgment as to a counterclaim of breach of contract. Rather, this court denied Virtue Realty's motion for summary judgment as to defendants' special defenses because it was procedurally incorrect to move for summary judgment as to special defenses, not because questions of fact existed as to whether the contract was breached.
"The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise." Edart Truck Rental Corp.v. B. Swirsky Co., 23 Conn. App. 137, 142, 579 A.2d 133 (1990). "Unconscionability is a question of law to be determined by the court in light of all the facts and circumstances of the case. . . ." Id. "The Uniform Commercial Code's provision concerning unconscionability; General Statutes § 42a-2-302; although addressed primarily to contracts for the sale of goods, furnishes a useful guide." Hamm v. Taylor, 180 Conn. 491, 495, 429 A.2d 946 (1980). The test for unconscionability is "whether, in light of the general commercial background and the commercial needs of the particular trade, `the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.'" Id., quoting Texaco, Inc. v. Golart,206 Conn. 454, 462, 538 A.2d 1017 (1988).
"The determination of unconscionability is to be made on a case-by-case basis, taking into account all of the relevant facts and circumstances." Cheshire Mortgage Service, Inc. v. Montes,223 Conn. 80, 89, 612 A.2d 1130 (1992). Under the test for unconscionability, "the plaintiff's actions must be weighed against the defendant's business experience, the business practices of the community, and the relatively equal bargaining power of the parties." Emlee Equipment Leasing v. Waterbury Transmission,]31 Conn. App. 455, 464, 626 A.2d 307 (1993), quoting Edart TruckRental Corp. v. B. Swirsky Co., supra, 23 Conn. App. 142. "Unconscionability generally requires a demonstration of `an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" Emlee Equipment Leasing v. Waterbury, supra, 464, quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445,449 (D.C. Cir. 1965).
 When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the CT Page 6692 parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination. Whether interest rates are unconscionable is a question that should not be decided simply by judicial surmise about prevailing prime interest rates. The financial circumstances of the borrower, the increased risk associated with a second mortgage, and the income-producing capacity of the mortgaged property are some of the questions of fact that might appropriately be explored to shed light on whether a designated interest rate is or is not unconscionable.
Hamm v. Taylor, supra, 180 Conn. 494. In Hamm,
the Supreme Court reversed the trial court's decision that a mortgage was unconscionable because the only facts before the trial court were the terms of the mortgage itself.
In Iamartino v. Avallone, 2 Conn. App. 119, 477 A.2d 124
(1984), the court found that an interest rate, calculated by the plaintiffs as 37% based on a six month payment period, and by the defendants as 45% based on a four month payment period, was not unconscionable. Some of the factors that the court used in its determination were: the loan was commercial, not consumer; the note was secured by a second mortgage on nonincome-producing property; the defendant was an experienced real estate speculator; the plaintiff was not the only source of funds available to the defendant; the financing sought by the defendant involved a great risk to the lenders in an economic environment of high interest rates even for the most credit-worthy borrowers; the rate charged was in line with the general rates prevailing at that time for that type of financing; the defendant was represented by counsel; and the defendant was not misled or forced into the transaction. The court held that "despite what appears to be a high rate of interest, we conclude that the note in question was not unconscionable." Id., 126.
The affidavit of Robert P. Hinkle states that the defendants were charged 2% over the Bank of New Haven Prime Rate. Hinkle affidavit, ¶ 19. The prime rate is that rate charged to the banks most responsible and substantial customers. Hinkle, ¶ 22. The subject loan was secured by a second mortgage on the defendants' home which was already encumbered by a first mortgage. Hinkle, ¶ 24. The payment schedule submitted along with Virtue Realty's motion states that during the period from June 12, 1986 to September 23, CT Page 6693 1991, the interest rate of the subject loan did not exceed 14%. Virtue Realty's motion, Exs. 3 and 7. Brett Silver's affidavit states that "the pricing structure of a specific spread over an internal prime rate (i.e., 2% over the Bank of New Haven Prime Rate) was characteristic of commercial loans in 1986." Silvers affidavit, ¶ 4. Silvers also states that it was customary for the Bank of New Haven to make commercial loans ranging from approximately 1% to 3% over the Bank of New Haven Prime Rate. Silvers affidavit, ¶ 11. In 1986, Sheldon and Jennith Liner were not the Bank's "most responsible and substantial" customers. Silvers affidavit, ¶ 13.
Both Sheldon and Jennith Liner state in their affidavits that no representative of the bank explained to them what the difference in the bank's prime rate was or how it fluctuated over time historically in comparison with the prime rates of other banks. Jennith Liner affidavit, ¶ 6, Sheldon Liner affidavit, ¶ 6. The prime rate was explained as being a percentage above the Bank of New Haven Prime Rate. Jennith Liner affidavit, ¶ 6. Sheldon Liner states in his affidavit that "[a]t no time did any representative of the Bank of New Haven explain the difference between commercial and consumer transaction." Sheldon Liner affidavit ¶ 5.
The Liners have failed to show any evidence of how the interest rate charged to them was unconscionable. Virtue Realty submitted evidence regarding the commercial setting of the loan, the general practice of the bank, and the status of the Liners as borrowers. In view of the evidence submitted, the defendants have failed to refute any of the evidence submitted by Virtue Realty. As a matter of law this court finds that the interest rate charged by the bank was not unconscionable. Accordingly, Virtue Realty's motion for summary judgment as to count two of the defendants' counterclaim is granted.
C. Count Three
The defendants allege in count three of their counterclaim that the bank violated the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes § 42-110a et seq. Virtue Realty argues in its motion for summary judgment that CUTPA does not apply to commercial transactions, and therefore as a matter of law, CUTPA does not apply to this case. Virtue Realty argues further that even if the defendant raised genuine issues of fact as to the commercial nature of the loan, there are no issues as to whether the bank charged "exorbitant" interest rates, "hid facts" CT Page 6694 concerning the interest rate, falsely misrepresented the commercial nature of the loan, or violated any duty to give written notice of the right to counsel.
Although the appellate courts have not ruled on whether CUTPA applies to banks, Graynor v. United Trust, 216 Conn. 458,582 A.2d 190 (1990), the "issue of whether CUTPA applies to banks ultimately depends upon the type of activities in which the bank is allegedly engaged. When a bank is engaged in consumer-oriented activities, CUTPA should apply." Economic Development Associated v. Cititrust,3 Conn. L. Rptr. 517 (March 27, 1991, Dranginis, J.). Due to its remedial nature, CUTPA has been construed broadly. Id.; Bristol"Savings Bank v. Szydlowski, 3 Conn. L. Rptr. 113, (January 7, 1991, O'Connor, J.).
Although the defendants do not set forth in their memorandum reasons why the motion for summary judgment on count three should be denied, their affidavits raise a genuine issue of material fact as to whether this transaction was a commercial or a consumer loan. Therefore, Virtue Realty's motion for summary judgment as to count three of defendants' counterclaim is denied.
D. Count Four
Count four of the defendants' counterclaim alleges that the bank has violated The Truth-in-Lending Act, 15 U.S.C. § 1635 and1640. Virtue Realty argues that since this was not a consumer credit transaction, the bank is exempt from the Truth-in-Lending Act. The defendants argue that on November 9, 1993, this court, Curran, J., ruled that genuine issues of material fact existed as defendants' claim of Truth-in-Lending Act violations. In its memorandum of decision dated November 9, 1993, this court, Curran, J., ruled that "[t]here are genuine issues of material fact as to whether Jennith Liner entered into a `consumer credit transaction' pursuant to the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq." Memorandum of Decision, Motion for Summary Judgment #174, p. 10.
Jennith Liner's affidavit states that "[a]t no time did any representative of the Bank of New Haven explain the difference between commercial and consumer transaction." ¶ 5. Jennith Liner also states that she was not given the right to rescind the transaction nor negotiate the interest charged on the note. ¶ 7. Jennith Liner states that the method or means of calculating the rate of interest was never explained to her. Since the defendants' affidavits raise a genuine issue of material fact as to whether CT Page 6695 this was a consumer transaction, Virtue Realty's motion for summary judgment as to count four is denied.
E. Count "Seven"
Count Seven of the defendants' counterclaim alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO),18 U.S.C. § 1961 et seq. and the National Bank Act, 12 U.S.C.A. §§ 85
and 86. Virtue Realty argues that the defendants have failed to allege sufficient facts to support the existence of two or more "predicate" acts as required for a violation of RICO.
The defendants argue that this court, Curran, J., ruled that defendants' counterclaim alleging a violation of RICO raised genuine issues of material fact. In its memorandum of decision the court Curran, J., held that "the plaintiff submitted a memorandum of law which does not demonstrate the absence of a genuine issue of fact and the entitlement of recovery as a matter of law." Memorandum of Decision, November 9, 1993, p. 11.
On the present motion, Virtue Realty has again failed to submit evidence that shows the absence of genuine issues of material fact as to whether the bank violated RICO. Accordingly, Virtue Realty's motion for summary judgment on count seven is denied.
III. Motion to Bifurcate Claims
Virtue Realty argues that if its motion for summary judgment is denied with respect to any counts of the defendant's counterclaim, then the court should bifurcate the remaining counterclaims from the complaint.
The decision to bifurcate a proceeding lies within the sound discretion of the court. In re Jose C., 11 Conn. App. 507, 508,527 A.2d 1239 (1987); In re Migdalia M., 6 Conn. App. 194, 198-99 n. 6,504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). If the court cannot "properly distinguish the evidence the distinct issues" the motion to bifurcate should be granted. In re Jose C.,
supra, 509. In In re Jose C., the court denied a motion to bifurcate holding that it "could properly distinguish the evidence presented on the distinct issues, and make its determination of whether to grant" a petitioner the right to terminate parental rights. Id. CT Page 6696
The Motion to Bifurcate is denied.
The Court
By Curran, J. State Trial Referee