[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
CT Page 16147
Following this court's decision of May 28, 1997 holding that defendant Allen-Bradley (A-B) had violated the Connecticut Franchise Act (CFA) (Connecticut General Statutes § 42-133e, et. seq.) and Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.) and issuing an injunction against defendant A-B prohibiting it from terminating its franchise with plaintiff Hartford Electric Supply Company (HESCO), the court recently set down for a hearing on the first Tuesday of February, 2001 the issue of damages flowing from defendant A-B's violation of those statutes.
Defendant A-B objects to such a hearing because: (1) it agreed only to refer to a judge trial referee the sole question of the issuance of a permanent injunction in this case, and (2) it did not waive its right to a jury trial on damages arising from a violation of CUTPA and CFA counts.
At the outset the court must determine whether or not the plaintiff is entitled to a jury trial under CUTPA and CFA and if so, as to what issues. Clearly if plaintiff is not entitled to a jury trial on those causes of action, there is no need for plaintiff's written consent to a judge trial referee nor for its waiver of the right to trial to jury. § 52-434.
CFA at § 42-133f(a) provides:
 "No franchisor shall, directly, or through any officer, agent or employee, terminate, cancel or fail to renew a franchise, except for good cause which shall include, but not be limited to the franchisee's refusal or failure to comply substantially with any material and reasonable obligation of the franchise agreement . . . "
Section 42-133(g) provides that franchisee may bring an action for injunctive relief, damages, and, if successful, shall be entitled to reasonable attorney's fees. CT Page 16148
Since CFA obviously is a statutory cause of action, the court must determine whether or not it gives rise to a right to trial by jury. In making that determination, the court must "ascertain whether the action being tried is similar in nature to an action that could have been tried to a jury in 1818 when the state constitution was adopted. This test requires an inquiry as to whether the course [sic] of action has roots in the common law, and if so, whether the remedy involved was one in law or in equity." Skinner v. Angliker, 211 Conn. 370, 376 (1989). "Consequently, statutory actions established since the adoption of the Constitution of 1818 ordinarily fall outside the scope of the provision, `unless, perhaps, the new remedy constitutes a "modification of existing remedies, so vital as to unduly limit and violate the right of trial by jury."'" [citations omitted] Bishop v. Kelly, 206 Conn. 608, 618 (1988)
In Associated Investment Co. Ltd. Partnership v. Williams Associates,230 Conn. 148 (1994) the Supreme Court looked at the expansive scheme of CUTPA; its essentially equitable character; its deviation from common law claims of unfair or deceptive practices by not requiring proof of intent to deceive, defraud or mislead; and concluded that it did not bear substantial similarity to a common law action triable to a jury prior to 1818.
Likewise in Motor Vehicle Manufacturer's Association v. O'Neill,212 Conn. 83 (1989) the Supreme Court construed Lemon Law II (§ 42-181, et. seq.) as providing a range of equitable as well as monetary remedies that reflected a pattern that was more equitable than legal. The court noted, "Indeed, the very enactment of Lemon Law II arises out of a legislative determination that legal remedies alone did not provide adequate relief for disappointed consumer purchasers of new motor vehicles." Id. at pages 92-3. The court therefore concluded that the plaintiffs had not established that they were unconstitutionally deprived of their right to a jury trial.
The very prohibiting language of § 4-133f (a) — "No franchisor shall. . . ." — lends itself to the interpretation that it essentially creates an equitable cause of action, the main purpose of which is for a court to enjoin the prohibited action.
Moreover, CFA creates rights that do not have roots in common law. Section 42-133(a) prohibits a franchisor from failing to renew a franchise except for good cause. Under common law a franchiser can refuse to renew a contract for any reason whatsoever. Section 42-133f (a) prohibits a franchisor from terminating or canceling a franchise "except for good cause which shall include, but not limited to franchisee's refusal or failure to comply substantially with any material or reasonable obligation of the franchise agreement . . ." The phrase CT Page 16149 "failure to comply substantially with any material obligation of the franchise agreement" limits a franchisor's common law right to terminate a franchise for a simple breach of contract. See this court's memorandum of decision, dated May 27, 1997, at pp. 31-32, affirmed 250 Conn. 334
(1999). Moreover, the burden is on the franchisor to prove good cause. Id. That burden surely has no counterpart in common law. Section 42-133f(a) provides that any waiver of the above rights of the franchisee contained in any franchise agreement shall be void. Again this is a limitation on contractual rights that does not exist in common law.
Moreover, CFA, enacted in 1972 and amended subsequently, has its genesis in a recognition of the disparity between the superior economic strength of franchisors and the inferior economic strength of franchisees, and that historic abuses in the franchise field could not be remedied by common law causes of action brought by franchisees. "Franchising in Connecticut", Richard W. Farrell, 54 Conn. Bar J. No. 5, 446-47 (October 1980) The court in Grand Liqht Supply Co. v.Honeywell, 771 F.2d 672, 677 (2d Cir. 1985), noting that termination of a franchise could be disaster to a franchisee, stated, "Thus it is clear the purpose of the statute was to prevent a franchisor from taking unfair advantage of the relative economic weakness of the franchisee."
The injunctive relief provided in CFA is by far its most important provision to effectuate the purpose of the statute and to preserve the franchise relationship.
No Connecticut cases have accorded a right to trial by jury in a CFA case. It may be noted that all the federal opinions, applying CFA, cited in this court's memorandum of decision dated May 28, 1997, are court and not jury cases.
This court concludes that based on the CFA's creation of rights that did not exist in common law and its essentially equitable purpose to protect franchisees, the statute does not give rise to the right to a jury trial.
Moreover, under traditional common law analysis, our courts have held that where legal and equitable issues are combined in a single action, "whether the right to a jury trial attaches depends upon the relative importance of the two types of claims. "Where incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers.'" Texaco,Inc. v. Golart, 206 Conn. 454, 459 (1988) The court further instructs that, "To determine whether the action is essentially legal or essentially equitable, we must examine the pleadings in their entirety." Id. See also United States Trust Co. v. Bohart, 197 Conn. 34, 45 (1985) CT Page 16150
Plaintiff's verified complaint alleges seven counts: the First Count for violation of CFA against defendant A-B; the Second Count for breach of contract against defendant A-B; the Third Count for implied covenant of good faith and fair dealings against defendant A-B; the Fourth Count for violation of CUTPA against defendant A-B; the Fifth Count for violation of CUTPA against defendant Daub; the Sixth Count for violation of CUTPA against defendant Lupone; and Seventh Count for tortuous interference with contract against defendants Daub and Lupone. The plaintiff seeks an injunction in the First and Fourth Counts for violation of CFA and CUTPA; attorney's fees pursuant to CFA and CUTPA; punitive damages pursuant to CUTPA and compensatory damages on all of the counts.[1]
In the First Count, after alleging the franchise relationship between HESCO and A-B and A-B's violation of CFA, plaintiff alleges the numerous ways it will suffer irreparable harm unless an injunction issues, and that it has no adequate remedy at law. In its prayer for relief the plaintiff seeks an injunction, costs and attorney's fees, pursuant to § 42-133(g) and also compensatory damages. However, the First Count for violation of CFA has as its main thrust and claim for relief an injunction.
The Fourth Count sounding in violation of CUTPA, in which plaintiff also seeks an injunction, relies entirely on violations of CFA. Viewing plaintiff's complaint as a whole, the CUTPA and common law counts are the bases for plaintiff claiming punitive and compensatory damages, but the First Count is the principal ground upon which the plaintiff seeks an injunction. Consequently, the court concludes the First Count, sounding in violation of CFA, is essentially equitable in nature.
Thus the court concludes that the plaintiff is not entitled to a jury trial on its First Count under CFA, or under its pleadings in this case.
CUTPA, at § 42-110(g), provides that a person bringing a CUTPA cause of action has the right to a jury trial "except with respect to the amount of punitive damages . . . or the award of reasonable attorney's fees . . ." Those issues are reserved to he court. Thus the only issue upon which the plaintiff may be entitled to a jury trial in this case is for compensatory damages under CUTPA. However, as further stated herein, the court finds that the plaintiff waived that right to a jury by express agreement, by conduct, and by judicial admission on the record of the case.
At the outset plaintiff obtained an ex parte temporary order restraining defendant A-B from refusing to continue the franchise CT Page 16151 relationship with HESCO until further order of the court. Judge Marshall Berger, the presiding civil judge, recommended, and the parties agreed to proceed to a hearing before this court on plaintiff's right to a permanent injunction on the basis of alleged violations of CFA and CUTPA. In the course of the trial, because of the flow of evidence, the court became unclear of exactly what issues it was deciding. The court referred the parties back to Judge Berger to clarify the submission to it. Counsel conferred with Judge Berger and the plaintiff's counsel reported to the court, as follows:
 "Judge Berger said this hearing before your honor is a hearing on everything except our claim for money damages under whichever counts as those such [sic] might be appropriate but put on hold until the court issues a further order."
Defendant's counsel concurred in this statement and the court gave defendant's counsel the opportunity to take further depositions of witnesses if he had any misunderstanding what the trial was about.
Later on in the trial, the court became aware that the plaintiff had claimed this case for a jury trial. The court asked plaintiff's counsel whether if his client won an injunction on the basis of a violation of CUTPA, the case would be tried all over again before a jury on the question of damages derived from a violation of CUTPA. Plaintiff's counsel said the trial could have been before a judge and jury but defendant did not want to delay the trial because it was under a temporary restraining order. Defendant's counsel, however, disagreed saying, "The parties agreed — we were in there with Judge Berger talking about scheduling the preliminary injunction hearing. We said, well rather than do that and have another trial later on, let's address all of the issues once and for all. And that's what the parties agreed to."
After the trial concluded, the court was still unclear exactly what the parties had agreed that it should decide. Particularly, it seemed wasteful that the court could decide the merits of the CUTPA counts, grant an injunction, and the plaintiff would still have the right to a jury trial for compensatory damages on those counts. It called a meeting of counsel in its chambers and expressed that concern. At that point plaintiff's counsel, Mr. Edward Hennessey, and Mr. David Ryan and defendant's counsel, Mr. Paul Sanson agreed that this court could hear and determine all of the issues respecting the counts of CUTPA and CFA, first as to liability and the issuance of an injunction, and then if there was a finding of liability on these counts, a subsequent hearing as to damages derived from violation of those statutes. Specifically, plaintiff's counsel waived a jury as to the CUTPA and CFA counts. CT Page 16152
At that point the court should have had that agreement put on the record in open court. It was a mistake by an experienced judge who should have known better. However, because the agreement was so clear and unequivocal, and the court felt it could rely on adherence by plaintiff's lawyers from one of Hartford's prestigious law firms, it did not do so.
Fortunately, defendant's counsel was wiser and more prudent than the court. It wrote to the court on December 16, 1996, with a copy to plaintiff's counsel, memorializing the agreement as follows:
Dear Judge Satter:
 The purpose of this letter is to set forth my understanding of the agreements reached at the meeting held in your office on Thursday, December 6, 1996. I had written to Attorney Ryan, HESCO's counsel, in the hope of submitting a joint letter, but he indicated he was not interested, stating that you had not requested such a letter. In light of some of the problems in the past, my clients believed that it would be helpful to have some memorialization of our meeting. My understanding is that the parties agreed that the Court would rule on the issues of:
 (1) whether there is liability against Allen-Bradley with respect to counts 1 [CFA] and 4 [CUTPA]; and
 (2) if there is liability, whether HESCO is entitled to the injunctive relief it has requested.
 In addition, the plaintiff has waived any claim for a jury trial on the above issues. The findings of fact and conclusions of law made by the Court in ruling on these issues will be the law of the case and will be, subject to the appeal rights of the parties, final and binding on the parties. For example, if the Court finds a violation of CUTPA but determines HESCO is not entitled to injunctive relief, the violation has already been proved and HESCO need only prove damages. Similarly, if the Court finds no violation of CUTPA, that is a final determination and HESCO is not entitled to any damages based on that claim.
 Please let me know if I have misstated or omitted anything.
CT Page 16153
Very truly yours,
Paul D. Sanson
The plaintiff's counsel never responded to that letter and never disavowed that statement of the agreement reached. The court construed plaintiff's counsel's silence as concurrence.
Our law is clear that "consent" or "assent" may be inferred from the attendant circumstances and conduct of the parties. Seal Audio. Inc. v.Bozak, Inc., 199 Conn. 496, 517 (1986); Rowe v. Cormier, 189 Conn. 371,373 (1983). The ancient maxim "silence gives consent" permits the inference that a party who is silent intends to consent or assent, when no other explanation is consistent with silence. State v. Martin,38 Conn. App. 731, 742 (1995), cert. denied 237 Conn. 921 (1996).
Here it was not only appropriate but obligatory for plaintiff's counsel to respond and indicate dissent from the agreement stated in defendant's counsel's letter of December 18, 1996, if any, because they knew the court was going to rely on that agreement in framing its decision.
In fact, the court's decision did reflect the agreement. The court held defendant A-B liable under CFA and CUTPA, issued an injunction, and indicated it would then hear the issue of damages in a separate subsequent hearing.
Defendant on June 17, 1997 moved this court to make a determination to permit an immediate appeal of the court's decision of May 28, 1997. The court conferred with counsel in its chambers and indicated to them that an appellate court was more likely to allow an interlocutory appeal if the trial court first heard and decided the issues of damages, so that the appellate court had the trial court's final decision on the CFA and CUTPA counts. Defendant's counsel did not want to proceed that way because the trial of those issues was likely to take too long and it wanted a quicker appellate review of the issue of liability under CPA. Plaintiff's counsel however, did agree to this court deciding damages on the CPA and CUTPA counts. This indicated they felt bound by the agreement that the court consider all of the issues under the CUTPA and CFA counts.
Later in this case, plaintiff moved for counsel fees under CPA, again indicating it agreed that the court should consider the issues of damages. The court denied the motion explaining that it would not determine damages piecemeal, but rather all elements of damages after a full hearing. CT Page 16154
The attorneys undertook discovery both on the issues of damages under CPA and CUTPA and on the common law counts to be tried to the jury. When their discovery conflicts came to the court, it ruled it wanted discovery issues relating to damages resolved and pursued first in order that the damages issue could be quickly decided, and that discovery issues relating to the common law counts could be resolved and pursued later. On April 10, 2000 in open court, while the court was attempting to resolve controversies respecting discovery, the following colloquy occurred:
 THE COURT: Look, on CUTPA, as well as on the Connecticut Franchise Act, my understanding is those were submitted to me and not to the jury. There is no jury issue alive with respect to CUTPA. You agreed to have those cases tried to me.
 MR. HENNESSEY: There is no issues alive; they have been decided. But all I'm saying, your Honor — all I was saying is that you haven't decided attorney's fees under CUTPA yet, you haven't decided punitive damages under CUTPA yet and you haven't decided other fees under the CFA yet.
 THE COURT: And I haven't decided general damages under CFA.
MR. HENNESSEY: That's right.
THE COURT: or general damages under CUTPA.
 MR. HENNESSEY: Absolutely. And I agree. I think we're on the same page.
The court construes plaintiff's counsel Mr. Hennessey's statement as a judicial admission. In State v. Smith, 222 Conn. 1, 20 (1992) the court quoted with approval IX Wigmore on Evidence (1981) Section 2590, p. 822)) as follows: "The vital feature of a judicial admission is universally conceived to be its conclusiveness upon the party making it, i.e. the prohibition of any further dispute of the fact by him and of any use of evidence to disprove or contradict it." (italics in original) "It is the nature of a judicial admission, plainly, that it be by intention an act of waiver relating to the opponent's proof of the fact and not merely an assertion or concession made for some independent purpose." Id. at § 2594, p. 833. Wigmore further notes in § 2594 (p. 832) that while agreements between counsel must be in writing to obtain enforcement from counts, "that policy need not apply to admissions made in court when the CT Page 16155 memory of the judges and the presence of other members of the bar could be trusted for verification in case of misunderstanding." (italics in the original).
The court concludes that the plaintiff's judicial admission that the court could hear damages under CFA and CUTPA constituted a waiver of jury trial on those counts and was as effective as if in writing.
Thus the court concludes, (1) CFA is a statutory action that does not entitle plaintiff to a jury trial and the manner plaintiff pleaded its CFA count made it essentially an equitable claim; (2) respecting both CPA and CUTPA, plaintiff waived the right to a jury trial by: (a) its counsel's silence after receiving defendant counsel's letter of December 18, 1996 stating the agreement that plaintiff's counsel had expressly waived a jury trial on the statutory counts, particularly when counsel knew the court was relying on that agreement in framing its decision; (b) its counsel's conduct indicating concurrence with that agreement by assenting to the court hearing damages on the statutory counts in order to expedite the interlocutory appeal, and by moving for counsel fees under CFA; and (c) its counsel admitting in open court that the court could hear damages on the statutory counts, having the effect of a written waiver of jury trial.
Thus the court will proceed to a hearing on all of the elements of damages pertaining to the CFA and CUTPA counts on the second Tuesday of February in 2001, as previously ordered. The parties are also to comply with previous orders of this court relating to scheduling of depositions of experts, completing discovery, and filing pretrial briefs.
With respect to pretrial briefs, the court requests the parties to brief three issues that are likely to arise in the hearing on damages: (1) The court, having found a violation of CUTPA based on a violation of CFA, can it in the hearing on damages consider any other acts of the defendant A-B amounting to violations of CUTPA ? (2) The court rendered its decision on May 28, 1997. Normally in a bifurcated case, after liability is determined, the hearing in damages follows immediately. Can the court consider plaintiff's entitlement to damages based on events occurring after its May 28, 1997 decision ? (3) Since damages for the common law counts to be submitted to a jury may overlap with damages for the statutory counts, the court requests that plaintiff specify in its pretrial brief damages claimed under CFA and under CUTPA.
Robert Satter State Judge Referee