MICHAEL J. IAMARTINO ET AL. *v.* LAWRENCE J. AVALLONE ET AL.

(2340)

TESTO, DUPONT and BORDEN, Js.

Argued December 7, 1983—decision released June 12, 1984

*Daniel Shepro,* with whom was *Robert M. Opotzner,* for the appellants (named defendant et al.).

*Jack D. Garamella,* for the appellees (plaintiffs).

BORDEN, J. This is an appeal[1] from two judgments of strict foreclosure rendered by the trial court. The plaintiffs commenced two separate mortgage foreclosure actions against the defendants: one, in the judicial district of Danbury, concerns a lot and house in

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

Brookfield; the other, in the judicial district of Litchfield, concerns unimproved real property in New Milford. The action filed in Litchfield was transferred to Danbury and the two cases were consolidated for trial.

The plaintiffs' mortgages on both parcels were junior to first mortgages. At oral argument on this appeal we were informed that the first mortgage on the New Milford property has since been foreclosed, extinguishing the plaintiffs' second mortgage on that property. This renders the appeal from that judgment moot. *City National Bank of Connecticut* v. *Henderson,* 1 Conn. App. 96, 468 A.2d 1258 (1983). We therefore confine our discussion to the appeal from the judgment of foreclosure rendered on the Brookfield mortgage.

The court found the following facts. On May 23, 1979, the named defendant, Lawrence J. Avallone,[2] executed a promissory note in the principal amount of $66,000, plus interest, payable monthly at an annual rate of eighteen percent. The principal was due on or before November 23, 1979. To secure this note Avallone granted a second mortgage on the property in Brookfield. This mortgage deed was executed in the statutory form and upon the statutory condition. See General Statutes §§ 47-36c and 47-36j. Avallone did not pay this note when it came due.

On January 23, 1980, Avallone executed and delivered to the plaintiffs a second note in the principal amount of $72,600, plus interest, at the annual rate of

---

[2] In the record, Avallone is referred to both individually and as "d/b/a Avallone Construction Company." References in this opinion to Lawrence Avallone refer to him under both appellations.

The other defendants are a mortgagee and an attaching creditor whose interests are junior to that of the plaintiffs; and Loumay Avallone, to whom Lawrence Avallone quitclaimed the property subsequent to granting the plaintiffs' mortgage. Thus, she is the owner of the equity of redemption in the property. Both she and Lawrence Avallone are the appellants in this court. References in this opinion to "the defendants" refer to Lawrence and Loumay Avallone.

eighteen percent, payable monthly beginning February 23, 1980. The principal was due May 23, 1980. The difference between the $66,000 due on the first note and the $72,600 principal amount of the second note represented a bonus. The second note provided for forgiveness of the bonus if the note was paid in full on or before February 23, 1980. Upon the execution of this note, the plaintiffs returned the first note to Avallone. Although the plaintiffs did not lend Avallone any new money in connection with the second note, they did give consideration in the form of forebearance from foreclosure on the mortgage, which was in default by virtue of nonpayment of the first note. The parties also executed and recorded a mortgage modification agreement. Avallone did not pay this note when due.

The court further found that Avallone is a speculator in buying, selling and developing land, and has been a contractor for six years. Before that he was in the home improvement business. He has owned a variety of properties, including a shopping center. At the time of the Brookfield mortgage, the house on the property was seventy percent completed, and was built on speculation. He later moved his family into the house, where they resided at the time of the trial.

Avallone was represented by counsel in all his dealings with the plaintiffs. He was accustomed to doing business with second mortgage lenders other than the plaintiffs. These plaintiffs were not the only second mortgage lenders available to him in the Danbury area. In May, 1980, he had obtained an eighteen month mortgage loan on other property, in the principal amount of $100,000, plus interest at an annual rate of twenty-two percent and a bonus of fifteen points. Between January and March, 1980, he obtained another second mortgage loan from another lender in the amount of $75,000, plus interest for one year at an annual rate of thirteen percent and a bonus of ten points. His busi-

ness was speculation. The loans involved here are not the loans of a householder or a long-established commercial or manufacturing business. The interest rates and bonuses involved reflected the general charges made at that time for the type of financing sought by Avallone: highly speculative, with great credit risk to the lender, in an economic environment of high interest rates for the most credit-worthy borrowers. Avallone was not misled by the plaintiffs; was not forced into the transaction by them; and entered it with full knowledge of what he was doing and receiving.

The court, rejecting the legal claims of the defendants, Lawrence and Loumay Avallone, concluded that neither the usury statute, the mortgage modification agreement nor the doctrine of unconscionability barred foreclosure, and rendered judgment for the plaintiffs. The defendants appeal, claiming error in these three issues; in addition, they claim error in a ruling on evidence and in a reference in the judgment to a default purportedly entered against Loumay Avallone. We find no error.

I

We disagree with the defendants' first claim on appeal; namely, that there was no bona fide mortgage upon which to bring an action of foreclosure because of the substitution of the notes. It is settled law in this state that a mortgage deed secures a debt, not a note. *Bolles* v. *Chauncey,* 8 Conn. 389, 391–92 (1831). When the second note was substituted for the original note, it did not extinguish Avallone's debt to the plaintiffs; it simply enlarged that debt, which enlargement the mortgage modification agreement reflected on the land records. As between the plaintiffs and these defendants, the initial mortgage remained valid, even though a new note had been given in substitution for the original note. See *City National Bank* v. *Stoeckel,* 103 Conn.

732, 741, 132 A. 20 (1926); see also *State National Bank* v. *Dick,* 164 Conn. 523, 530, 325 A.2d 280 (1964) (the principle that a mortgage deed must accurately describe the debt is relevant to subsequent encumbrancers but not as between the parties to the deed).

The defendants' contention that the mortgage modification agreement was invalid because it did not contain the word "grant" is equally bereft of merit. General Statutes § 47-36a (b) (1) specifically provides that "[t]he use of the word 'grant' is not necessary to convey" real estate. Since the initial mortgage deed did not require the inclusion of the word "grant," neither did the mortgage modification agreement.

## II

The defendants next claim in effect that the foreclosure is barred because the note was usurious. We agree with the trial court that the loan to Avallone falls within the exemption from the operation of the usury statute; General Statutes § 37-4; of a "bona fide mortgage of real property for a sum in excess of five thousand dollars." General Statutes § 37-9 (3). Thus, the defense of usury was unavailable in a suit for foreclosure of this mortgage. *Associated East Mortgage Co.* v. *Highland Park, Inc.,* 172 Conn. 395, 405, 374 A.2d 1070 (1977). Avallone's claim that the word "sum" in General Statutes § 37-9 (3) is limited to cash finds but slim support in the language of the statute and no support in its purpose, in reason or in economic reality. Furthermore, since usury is a defense personal to the borrower, or his accommodation maker or endorser, it was unavailable to Loumay Avallone. *Whalley Motors, Inc.* v. *Kesselman,* 145 Conn. 342, 346, 143 A.2d 158 (1958).

## III

The gist of the defendant's next claim is that foreclosure should be withheld because the mortgage note

bore an unconscionable rate of interest. The plaintiffs calculate the interest rate at thirty-seven percent, based on a six month payment period from November, 1979 through May 23, 1980. The defendants calculate the rate at forty-five percent, on the basis of a four month payment period from January 23, 1980, to May 23, 1980. As did the trial court, we find it unnecessary to resolve this dispute, and we conclude that, using either rate, under the circumstances of this case the transaction between the parties was not unconscionable.

We first consider our scope of review of the trial court's conclusion that the transaction was not unconscionable. As applied to real estate mortgages, the doctrine of unconscionability draws heavily on its counterpart in the Uniform Commerical Code which, although formally limited to transactions involving personal property, furnishes a useful guide for real property transactions. *Olean* v. *Treglia,* 190 Conn. 756, 762, 463 A.2d 242 (1983); *Hamm* v. *Taylor,* 180 Conn. 491, 495, 429 A.2d 946 (1980). It is clear that under the code the question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case. General Statutes § 42a-2-302; Uniform Commercial Code § 2-302, comment 3; *Stanley A. Klopp, Inc.* v. *John Deere Co.,* 510 F. Sup. 807, 810 (E.D. Pa. 1981). It is equally clear, therefore, that whether a real estate mortgage note is unconscionable is a question of law; see *Hamm* v. *Taylor,* supra, 495–97; and is thus reviewable by us, unlimited by the "clearly erroneous" standard.

Whether an interest rate is unconscionable depends, inter alia, on the borrower's financial circumstances, the increased risk of a second mortgage and whether the mortgaged property is income-producing. Id., 495. " '[T]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are

so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.' " Id., 495–96.

Under this gauge this transaction was not unconscionable. The loan was a commercial, not a consumer, transaction. The note was secured by a second mortgage on nonincome producing property which, at the time of the transaction, was not fully improved. Avallone was an experienced real estate speculator, who at about the same time borrowed substantial funds from other lenders at comparably high rates. The plaintiffs were not the only source of funds available to him. The financing which Avallone sought was for a highly speculative venture, involving great risk to the lenders, in an economic environment of high interest rates even for the most credit worthy borrowers. The rate charged was in line with the general rates prevailing at that time for that type of financing. Avallone was represented by counsel; was not misled or forced into the transaction; and entered it with full knowledge of its risks and rewards. Thus, despite what appears to be a high rate of interest, we conclude that the note in question was not unconscionable. See also *In Re Metal-Built Products, Inc.*, 3 Bankr. 176 (E.D. Pa. 1980) (interest rate exceeding one hundred percent held, on facts of the case, not unconscionable).

## IV

Loumay Avallone next argues that the court erroneously entered a default and rendered a judgment against her for failure to plead, when in fact she filed an answer and special defenses. Although the memorandum of decision erroneously refers to such a default, both the transcript and the judgment correctly reflect that she was not defaulted and that she was permitted to present her defense. Her claim of error is without merit.

## V

Finally, the defendants challenge the court's ruling striking their expert witness' opinion that the interest rate charged was unreasonable. The witness testified that the rate was far in excess of the market and unreasonable. The plaintiff objected to the word "unreasonable." The court sustained the objection and granted the motion to strike. We note that the defendants did not state the basis of their claim. See Practice Book § 288. Moreover, the same witness also testified that the rate was outrageous and gouging. We fail, therefore, to see how the defendants were harmed by the ruling.

There is no error in the judgment concerning the Brookfield mortgage; the appeal concerning the New Milford mortgage is dismissed as moot.

In this opinion the other judges concurred.