[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff sues the defendants for nonpayment of a promissory note on which defendant Chapel Tool Company is the payor and defendant William Rurka is the guarantor.
The court finds that the promissory note in the face amount of $221,960.01, bearing interest at the rate of 18% per annum and providing for attorney's fees in the event of default and for a late charge of 2% of the principal portion of each unpaid monthly installment, was duly executed by Chapel Tool Company (hereinafter Chapel Tool) as payor, to plaintiff, as payee, on April 28, 1982, and said note was personally guaranteed by defendant William Rurka. CT Page 952 It was the consolidation of two previous notes, the proceeds of which were used by Chapel Tool to purchase a Monarch drill press and an Okumo horizontal lathe. Chapel Tool also executed in favor of the plaintiff a Security Agreement, a Proceeds Authorization and a UCC-1 Financing Statement covering the Monarch and Okumo machines. Chapel Tool failed to pay the March 1984 monthly installment and on November 15, 1985 plaintiff declared Chapel Tool in default. After negotiations between Chapel Tool and a third party over purchase of Chapel Tool's assets failed, Chapel Tool sold the Okumo lathe to the third party for $87,000, with plaintiff's consent, and the proceeds were applied in reduction of Chapel Tool's debt to plaintiff.
In February, 1987 plaintiff repossessed the Monarch drill press and placed it for sale with a machine marketing concern. That concern cleaned and repaired the Monarch, advertised it in used machine catalogues and trade magazines having wide circulation in the trade, and sold it in September, 1988 for $3,400.
The amount due and owing on the note was calculated by the plaintiff as follows:
 Principal $185,937.00 Interest (5/15/83 to 10/3/89, approx. 2,370 days at $90.30/day) 214,030.77 Late charges through May, 1988 77,846.64 Storage charges and repossession charges for Monarch 4,378.50 ----------- $482,192.91 Credit from Okuma sale $87,000.00 Credit for Monarch sale 3,400.00 90,400.00 ---------- ----------- $391,792.91 Legal fees 5,738.35 ---------- $397,531.26 Interest from 10/21/89 to 7/30/90, 282 days at $90.30 25,464.60 ---------- $442,995.86
The defendants assert three defenses: (1) Plaintiff has improperly stated the amount owed; (2) the terms of the note are unconscionable; (3) sale of the collateral was not commercially reasonable under 49a-9-504 (3) of Conn. Gen. Stat. Each of these defenses are without merit.
Defendants claim that plaintiff charged interest on the principal of the debt without reducing the principal by the amount CT Page 953 plaintiff received for the machines sold. The evidence does not support this claim. Plaintiff's representative testified the principal was reduced by monies received from the sale of the machines and interest thereafter calculated on that lesser amount.
Defendants claim unconscionability of the note based on the annual rate of interest of 18% and the additional late charge of 2% of the principal portion of an unpaid monthly installment. The basic test is whether the terms are so one-sided as to be unconscionable in light of the general commercial background and the commercial needs of the particular trade. Official Comment 1 to 2-302 of Commercial Code. Regard may be had to the financial circumstances of the borrower, the commercial risk involved and the income-producing capacity of the collateral securing the loan. Hamm v. Taylor, 180 Conn. 491, 495 (1980).
In this case the note being sued upon consolidated two previous notes, the proceeds of which were used by Chapel Tool to buy two machines. The note reduced defendants monthly payments under the earlier notes. The transaction was commercial in character and designed to enable Chapel Tool to purchase income producing equipment. In Immartino v. Avallone, 2 Conn. App. 119
(1984), a 37% to 47% annual interest rate (depending on how calculated) was not found unconscionable under the circumstances of that case. This court reaches the same conclusion in this case.
Defendants finally assert that the sale of the collateral was commercially unreasonable in violation of 42a-9-504(3) of the Uniform Commercial Code. That section provides that disposition of collateral may be by public or private proceedings, "but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Defendants sole basis for its assertion is that defendant Rurka testified the Monarch was worth $30,000 to $35,000 and it was sold for $3,400. Section42a-9-507(2), however, provides:
 The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.
Here the evidence was that the machine lacked a control unit, CT Page 954 tool changer, and modern numerical controller. The marketing firm advertised it extensively in trade catalogues and magazines before the sale. This court concludes that under all the facts and circumstances the sale was commercially reasonable.
Based on the foregoing, judgment may enter in favor of the plaintiff against the defendants in the amount of $422,995.86.
ROBERT SATTER, J.