[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to foreclose a mortgage placed on real estate owned by the defendant at 12-14 Arnold Street, Hartford, Connecticut to secure a $15,000.00 promissory note.
On November 20, 1989, the defendant Adele Hooper (Hooper) and the defendant Christopher Delfino (Delfino) borrowed $15,000.00 from the plaintiff. Hooper and Delfino executed a promissory note to evidence the debt. The promissory note recited that the sum of $15,000.00 included a non-refundable finance change of $1,500.00 plus interest at the rate of 24% per year. The interest payments were scheduled to be paid monthly at $300.00 per month. The promissory note required the first payment to be made on December 21, 1989, and on the same day each month with the final balloon payment of principal and interest of $15,300.00 due on November 21, 1990.
The promissory note was secured by a blanket mortgage on property of the defendant Hooper located at 12-14 Arnold CT Page 6022 Street, Hartford, and also by a condominium owned by the defendant Delfino located at Unit 13, 176 Water Street, Southington, Connecticut.
The defendant Delfino was never served in this action. On October 1, 1990, the plaintiff filed a withdrawal of this action against the defendant Delfino.
The defendant Hooper admits the execution of the promissory note as a maker, and admits securing the promissory note with a mortgage on her property at 12-14 Arnold Street, Hartford.
Hooper admits all of the allegations of plaintiff's complaint except that the loan is in default and that the note and mortgage are owned by the plaintiff. As to these two answers, Hooper leaves the plaintiff to his proof.
The defendant Hopper interposes a special defense that there was no consideration for the note and mortgage.
The defendant Hooper filed a three count counterclaim. Count one recites a belief that the plaintiff should have investigated the reason for the loan as a protection for Hooper who was an elderly widow in her seventies. The defendant Hooper alleges a direct violation of Conn. Gen. Stat. sec.42a-1-203[1] for breach of implied warranties of good faith and fair dealings. The second count of the counterclaim alleges that the plaintiff had an obligation to warn Hooper about Delfino and that this failure was intentional, wilfull, wanton, malicious, outrageous, and oppressive.
Count three of the counterclaim alleges that the plaintiff knew or should have known that when defendant took a second mortgage of $40,000.00 and a third mortgage of $15,000.00 that the notes could not be repaid and that a foreclosure of Hooper's house would result therefrom. Hooper alleges that this action constitutes an unfair trade practice in violation of Conn. Gen. Stat. sec. 42-110b et. seq. (CUTPA).
The plaintiff essentially denies the allegations in the special defense and counterclaim of Hooper.
Plaintiff's complaint alleges the following mortgages having a prior right to the present mortgage being foreclosed: 1) Bank of Hartford, Inc. in the original amount of $30,000.00 dated September 1, 1988; and 2) Ellen Rosenblit, Trustee, in the original amount of $40,000.00 dated June 8, 1989.
Defendant Hooper's special defense of no consideration CT Page 6023 given for the note and mortgage deed has no merit. The consideration for the promissory note and mortgage deed was the payment of $15,000.00 to Hooper and Delfino. The burden of proof as to lack of consideration in upon the defendant Hooper, and she has failed to sustain this burden. Kessler v. Valerio,102 Conn. 620, 624-26 (1925).
The first count of the counterclaim raises the issue of whether or not the lender has any duty or obligation to make inquiries of the borrower's financial status in order to protect the borrower's interest.
At the time of the execution of the $15,000.00 note on November 20, 1989, the defendant Hooper was over seventy years of age. Hooper, in 1989 was a retired state employee living alone, as a widow, in her home at 12 Arnold Street, Hartford, Connecticut. Mrs. Hooper was receiving Social Security as an income supplement.
In January, 1989, Mrs. Hooper met Delfino at an accountant's office in which Mrs. Hooper was working part-time. Delfino was in the real estate business. He led Hooper to believe that he owned real estate in Florida and in Pennsylvania. When Mrs. Hooper first met Delfino, Delfino had previously been charged with passing bad checks. Delfino had been in jail in Hartford based on passing bad checks. He was placed on probation for five years. After this incident Delfino went to work in the same office where Mrs. Hooper worked at D D Company accounting firm.
Delfino had previously, in June of 1989, prevailed upon Mrs. Hooper to cosign a promissory note for $40,000.00 and place a second mortgage on her home at 12 Arnold Street, Hartford, Connecticut, to secure a loan to Delfino.
The promissory note for $40,000.00 that Mrs. Hooper cosigned was for one year at an interest rate of 24% per year. The lender charged a non-refundable prepaid finance charge of $4,000.00. Interest was to accrue for six months and added to the principal as compounded interest. After six months, interest only payments were to be made monthly until the note was due one year after the date of execution.
Mrs. Hooper did not receive any of the proceeds of the $40,000.00 loan. Mrs. Hooper knew and consented to the sum of $40,000.00 being given to and used by Delfino for his personal use.
Five month later, in November of 1989, Mrs. Hooper again cosigned a promissory note with Delfino for $15,000.00 CT Page 6024 secured by a second mortgage on her Arnold Street property and a mortgage on Delfino's condominium. The purpose of this loan was to give Delfino money to pay for improvements to his condominium. Mrs. Hooper ended up realizing $250.00 of the amount of the $15,000.00 loan.
The $15,000.00 loan was for one year, at an interest rate of 24% per year. A $1,500.00 non-refundable prepaid finance charge was also made on this loan making the total interest charged at approximately 34% per year.
The plaintiff primarily relied upon Delfino to repay the loan. The plaintiff had seen tax returns of Delfino and believed that Delfino had income over eighty thousand dollars per year from which to repay the loan.
Prior to the execution of the $15,000.00 note in November of 1989, a detective from the Hartford Police Department contacted Hooper and warned her that she should be careful about getting involved with Delfino and giving him any money. Hooper told the detective that Delfino deserved another break, that she had faith in him and it was her money to do what she wished to do with it. She was telling the detective to mind his own business.
The detective had previously investigated a matter involving a Mrs. Heneghan who, similar to Hooper, had befriended Delfino. Mrs. Heneghan had taken Delfino in her house as a boarder and subsequently conveyed a half interest in her house to him. Three mortgages were taken out on Mrs. Heneghan's house with the money given to Delfino to invest in a condominium. The detective investigated and found that no such condominium existed.
Mrs. Hooper had read in the newspaper about Mrs. Heneghan giving Delfino money prior to November, 1989. Mrs. Hooper also had talked to Mrs. Heneghan when Mrs. Heneghan had come into the accounting office where both Delfino and Mrs. Hooper worked. Mrs. Hooper knew that Mrs. Heneghan was concerned about the money that she had given Delfino and that the bank holding the mortgage on Mrs. Heneghan's house was foreclosing on it.
In spite of all the warnings from the Hartford Police detective and the knowledge of Mrs. Heneghan's situation, Mrs. Hooper disregarded these facts, and borrowed the $15,000.00 to give to Delfino.
At no time did Mrs. Hooper inform the plaintiff or plaintiff's attorney that Delfino had a criminal history or CT Page 6025 that she had been warned by the police about the activities of Delfino. We recognize that Mrs. Hooper, although seventy years of age, did not appear to be infirm nor without her faculties, either at the time of the loan or at the trial of this case.
Under the present circumstances, if the plaintiff did make an investigation of Delfino, as suggested by Mrs. Hooper, and gave that information to Mrs. Hooper, the information, even if derogatory, would not have changed Mrs. Hooper's mind in proceeding with the loan and mortgage for the benefit of Delfino.
The defendant Hooper acknowledges in her brief that the plaintiff and she are innocent parties, and that Delfino was the "guilty" party in this transaction. The defendant Hooper seeks to have this court determine that in balancing the equities between the plaintiff and herself, she should prevail.
The defendant Hooper's argument is that the interest rate charged by the plaintiff was unconscionable given the borrower's financial circumstances.
The defendant Hooper's reasoning that the high interest rate implies unconscionability is founded on the provisions of the Uniform Commercial Code, Conn. Gen. Stat. sec.42a-1-203[2]. Our courts have previously turned to the Uniform Commercial Code, which deals with personal property, as a guide or framework to use in resolving issues "of unconscionability with respect to a real property mortgage. . . ." Conference Center Ltd. v. TRC, 189 Conn. 212, 225 (1983).
The concept of unconscionability has developed from a commercial setting where the clause of a contract is so "one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." Hamm v. Taylor,180 Conn. 491, 495-96 (1980).
"[U]nconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case." (Citations omitted). Iamartino v. Avallone, 2 Conn. App. 119,125 (1984).
In this case, the defendant Hooper claims in her brief that the effective interest rate on the note, including closing costs, was in excess of 40%.
"Whether an interest rate is unconscionable depends, inter alia, on the borrower's financial circumstances, the increased risk of a second mortgage and whether the mortgaged property is income-producing." Id. CT Page 6026
In Iamartino, supra, the defendant sought to fore stall the foreclosure of the plaintiff's mortgage by claiming that the rate of interest in the mortgage note was unconscionable. The plaintiff calculated the rate of interest at 37%, whereas the defendant calculated the interest at 45%. The court, in Iamartino found that neither 37% nor 45% were unconscionable rates of interest.
"Whether interest rates are unconscionable is a question that should not be decided simply by judicial surmise about prevailing prime interest rates." Hamm v. Taylor, supra, 495.
In considering whether the transaction in this case was unconscionable we must consider the background, the needs of the parties, and the circumstances existing at the time of the transaction. Texaco, Inc. v. Golart, supra 462.
Mrs. Hooper and Mr. Delfino applied to the plaintiff to borrow $15,000.00. The $15,000.00 note was secured by the property of Mrs. Hooper which already had a first mortgage on it for $30,000.00, and a second mortgage for $40,000.00. Mr. Delfino secured the same $15,000.00 note with a mortgage on his condominium. Mrs. Hooper was a retiree with limited income. Mr. Delfino was in the real estate business. Neither the plaintiff nor the plaintiff's attorney knew of the criminal history of Delfino or his relationship with Mrs. Heneghan. On the other hand, Mrs. Hooper was warned by the Hartford Police detective about Mr. Delfino and his practices of obtaining money. Mrs. Hooper also knew of the relationship of Delfino with Mrs. Heneghan. All of these instances should have sent warning signals to Mrs. Hooper not to get involved with Delfino in any financial transaction. Mrs. Hooper deliberately ignored the information presented to her that she should avoid getting involved with Delfino.
The defendant Hooper alleges in her counterclaim, that the plaintiff owed her a duty to investigate the relationship between her and Delfino to determine whether or not this relationship was in her best interest. No allegation has been made that the loan of $15,000.00 was illegal, or that there was a failure to make a full disclosure of the terms of the loan, or that any failure to comply with the laws, rules, or regulations pertaining to the loaning of money.
The defendant Hooper has the burden of proof to sustain her allegations against the plaintiff that the transaction between she and the plaintiff was unconscionable or in violation of any duty owed by the plaintiff to her. This she has CT Page 6027 failed to do. In considering the three criteria for determining whether a practice violates CUTPA, we find that the defendant Hooper has failed to sustain her burden of proof as to each of the three criteria. Webb Press Services Corporation v. New London Motors, Inc., 203 Conn. 342, 355 (1987).
Based upon the foregoing findings, judgment may enter in favor of the plaintiff on the defendant Hooper's counterclaim.
Conn. Gen. Stat. sec. 49-31e (c) provides
 (c) No judgment foreclosing the title to real property by strict foreclosure or by a decree of sale shall be entered unless the court is satisfied from pleadings or affidavits on file with the court that notice has been given to the homeowner against whom the foreclosure action is commenced of the availability of the provisions of sections 49-31d to 49-31i, inclusive.
Conn. Gen. Stat. sec. 49-31e further provides that
 "(a) In an action by a lender for the foreclosure of a mortgage of residential real property, such lender shall give notice to the homeowner of the availability of the provisions of sections 49-31d to 49-39i, inclusive, at the time the action is commenced."
We find no such notice was given.
Until such appropriate statutory notice has been given to Mrs. Hooper, no judgment foreclosing the title can be entered.
Accordingly, the claim for judgment of foreclosure is denied.
ARNOLD W. ARONSON JUDGE, SUPERIOR COURT