[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case arises out of a two count complaint filed on November 8, 1993, by the plaintiffs, Alfred W. Acker, Jr. and Judith Acker (Ackers) against the defendants, Rommerro H. Farrah, Lisa W. Farrah a/k/a Lisa Hallenbeck-Farrah (Farrahs), Henry L. Hallenbeck a/k/a Henry Louden Hallenbeck, Jr. and Phyllis A. Hallenbeck a/k/a Phyllis Ann Hallenbeck (Hallenbecks). The plaintiffs allege that the defendants defaulted under the terms of a Note and Purchase Money Mortgage in the amount of $150,300, dated July 16, 1990. The plaintiffs allege that the defendants, after paying for 2-1/2 years, failed to make payments since January 1993, at which time, the balance of the mortgage had been reduced to $147,769.79.
In count one the plaintiffs seek foreclosure on the mortgage and possession of the property located at 67 Lexington Road, West Hartford, CT. The plaintiffs allege that the installments of principal and interest due on February 15, 1993 and each and every month thereafter have not been paid and, therefore, the defendants are in default under the Note and Mortgage. As a result of this default, the plaintiffs have exercised their option to accelerate the entire indebtedness under the Note and have declared all sums thereunder due and payable, including, without limitation, principal, accrued and accruing interest, collection costs, expenses and reasonable attorneys' fees, pursuant to the terms of the Note and Mortgage.
In count two the plaintiffs seek a money judgment against the defendants, resulting from the default under the Note and the Mortgage. On April 27, 1995 the plaintiffs withdrew the second count as to defendants Hallenbeck. However, the second count still remains against defendants CT Page 11584 Farrah.
On December 20, 1993 defendants Farrah filed an answer, special defenses and a two count counterclaim against the plaintiffs. In their special defenses the defendants allege that the plaintiffs breached a duty of good faith and fair dealing in negotiation of the Mortgage and, secondly, that the Note terms are unconscionable, inequitable and/or usurious. In the first count of the counterclaim the defendants allege that the plaintiffs committed a breach of good faith and fair dealing regarding the mortgage. In the second count of the counterclaim, the defendants allege that the plaintiffs violated the Connecticut Unfair Trade Practice Act.
The following facts are found:
On June 12, 1990 a contract was entered into between the Ackers (sellers) and the Farrahs (buyers) for the purchase of property known as 67 Lexington Road in the Town of West Hartford (Defendants' Ex. A). The sale's price was $167,000. The Farrahs agreed to pay $16,700 as down payment and the Ackers in turn agreed to take back a 5 year purchase money mortgage for $150,300 payable in monthly installments. The interest on said mortgage was set at 9% for the first year, 9 1/2% for the second year, 10% for the third year and 10 1/2% for the fourth and fifth year at which time the balance of the mortgage plus accrued interest was due and payable. The Farrahs further agreed to paint the house, to install a new electric panel and to upgrade the kitchen within a certain time frame.
It was also agreed that the Hallenbecks would cosign the note and mortgage as accommodation makers.
The real estate closing for the subject property was held on July 16, 1990. All parties were represented by counsel. The warranty deed from Mr. Acker to the Farrahs (Plaintiffs' Ex. 1), the closing statement signed by all the parties (Plaintiffs' Ex. 2), the promissory note (Plaintiffs' Ex. 3) and the mortgage deed to Acker from the Farrahs (Plaintiffs' Ex. 4) and the Hallenbecks were all properly executed.
The Farrahs made timely payments on the mortgage and CT Page 11585 note up to and including January, 1993 payment. Taxes were also paid to the Town of West Hartford.
It is uncontradicted that the Farrahs have not made mortgage payments nor have they paid taxes on the house since January, 1993.
On April 27, 1995, the case against the Hallenbecks was withdrawn upon payment of $50,000 to Acker, thus leaving the Farrahs as the only defendant.
It is incumbent on the court to examine the two special defenses and the two counter claims of the Farrahs.
The court agrees with and incorporates the part of plaintiffs counsel's well written brief concerning defendants special defenses and counterclaims.
A. Defendants' First Special Defense Is Without Merit
Defendants' first special defense alleges that plaintiffs breached a "duty of good faith and fair dealing" because the premises were in such poor condition as to be "worth far less" that the face value of the Note securing it. Connecticut law does not impose a duty of good faith and fair dealing, per se, on contracting parties, but the validity of a defendant's assent to a contract may be brought into question if it was obtained through fraud or misrepresentation. Petterson v. Weinstock, 106 Conn. 436,138 A. 433 (1927); Heating Acceptance Corp. v. Patterson,152 Conn. 467, 208 A.2d 341 (1965). Defendants' claim fails because their assent to the real estate contract was not obtained through any fraud or misrepresentation. The Ackers made no representations to the defendants — regarding either the "worth" or condition of the premises — and they in no way impeded the defendants from making their own determination.
Defendants had ample opportunity to inspect the property themselves and in fact did walk through the house three times before the closing. The real estate contract that defendants Farrah tendered to the Ackers included a home inspection addendum in which it was defendants' Farrah (as buyers) obligation to have a professional engineer make a report on the condition of the house. There were also riders providing for a radon test and termite inspection. CT Page 11586 The defendants had full opportunity to inspect the house both before and after the contract was signed. Neither did the Ackers' broker (Carolyn Morse) have any direct contact with the defendants. Furthermore, the defendants admit that at no time did plaintiffs or plaintiffs' broker ever impede their inspection of the premises. Thus, it is clear that there was no fraud or misrepresentation by Mr. Acker, but that he acted with good faith and fair dealing in this transaction.
B. Defendants' Second Special Defense Is Without Merit
Defendants' second special defense also lacks merit. Defendants object to the terms of the Note as being "unconscionable, inequitable and/or usurious," but the Note is clearly not usurious, and neither is it unconscionable nor inequitable under Connecticut law.
Usury is defined by statute in Connecticut as a loan at an interest rate of greater than 12 percent. CGSA § 37-4. The highest interest rate in the Note complained of here was10-1/2 percent. Thus, the rate was not usurious. Moreover, there is a specific exclusion in CGSA § 37-9 for mortgages on real estate. The courts have consistently held that the defense of usury is unavailable in a suit for foreclosure of a mortgage of real property. Associates East Mortgage Co.v. Highland Park, Inc., 172 Conn. 395, 374 A.2d 1070 (1977);Iamartino v. Avallone, 2 Conn. App. 119, 124, 477 A.2d 124,cert. denied, 194 Conn. 802, 478 A.2d 1025 (1984).
Neither is the note unconscionable or inequitable. Unconscionability is a matter of law to be decided by the court. Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80,88, 612 A.2d 1130 (1992); Hamm v. Taylor, 180 Conn. 491,493, 429 A.2d 946 (1980); Emlee Equipment LeasingCorporation v. Waterbury Transmission, Inc., 31 Conn. App. 455,626 A.2d 307 (1993). Although there is no statutory definition of unconscionability in Connecticut, the Supreme Court has looked to the Uniform Commercial Code for a definition by analogy. Hamm v. Taylor at 495. As to unconscionability of a contract, the Hamm court adopted the basic test described in the UCC: "whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances CT Page 11587 existing at the time of the making of the contract," Id. at 495, quoting Official Comment 1 to § 2-302 of the Uniform Commercial Code. The appellate court has added that "the plaintiff's actions must be weighed against the defendant's business experience, the business practices of the community, and the relatively equal bargaining power of the parties." Edart Truck Rental Corporation v. B. Swirsky Co., 23 Conn. App. 137, 143, 579 A.2d 133 (1990).
Under the above test, the Note and mortgage at issue here clearly are not unconscionable. The terms are not one-sided, but represent a standard real estate contract with interest at or very near the going rate at that time. Furthermore, the parties had complete equality of bargaining power, as either party could have walked away from the deal at any time. Evidence of the defendants' bargaining power is also shown by the fact that the plaintiffs were bargained down from their listing price to a selling price of $167,000. Finally, the defendants had very considerable business experience, as Rommerro Farrah has been a car salesman for many years and is thus knowledgeable about negotiating and closing deals. All of these factors, when applied to the test defined by the Court, demonstrate that the Note and mortgage at issue here were not unconscionable. Furthermore, it is hard to understand how the defendants can claim that the terms of the contract were unconscionable when the exact terms were proposed by the defendants in their purchase offer dated June 8, 1990.
In the very few instances when Connecticut courts have held mortgages to be unconscionable, there were circumstances and terms involved that were egregiously one-sided and fraudulent. For example, in First CharterNational Bank v. Ross, 29 Conn. App. 667, 617, A.2d 909 (1992), unconscionability was found when a mortgagor was induced to sign a mortgage, when she was told the papers she was given to sign were not regarding the mortgage, when in fact they were.
More usually, the courts have not found agreements to be unconscionable, even when terms seem to be one-sided. For example, in Cheshire Mortgage Service, Inc. v. Montes,223 Conn. 80, 612 A.2d 1130 (1992), where the defendants had been charged a 20 percent prepaid finance charge in addition to a high rate of interest, the court said: "In sum, while CT Page 11588 the defendants may have been imprudent in entering into the May 1988 transaction, we cannot conclude, on the basis of the record in this case, that the defendants were oppressed or unfairly surprised, or that the terms of the transactions were so one-sided as to be unconscionable as a matter of law." Id. at 94.
C. Defendants Cannot Prevail on Their First Counterclaim
Defendants' first counterclaim is that the allegedly poor condition of the property created such health and safety hazards as to constitute a breach of plaintiffs' duty of good faith and fair dealing. However, this claim fails for the same reason as defendants' first special defense. Plaintiffs' duty of good faith and fair dealing as sellers was that they not engage in fraud or misrepresentation. As outlined above, plaintiffs did not make any representations to the defendants about the condition of the premises and did not hinder the defendants' inspection of the premises in any way.
D. Defendants' Second Counterclaim Also Fails
Defendant alleges that in the sale of the premises plaintiffs somehow violated the Connecticut Unfair Trade Practices Act, CGSA § 42-110a, et. seq. (hereinafter "CUTPA"). CGSA § 42-110b states: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." However, the Supreme Court has consistently held that a single instance or even isolated instances of unfair practices do not warrant action under CUTPA. Lee v.Middlesex Ins. Co., 229 Conn. 842 (1994); Mead v. Burns,199 Conn. 651, 509 A.2d 11 (1986); Quimby v. Kimberly ClarkCorporation, 28 Conn. App. 660, 672, 613, A.2d 838 (1992);Koehm v. Kuhn, 41 Conn. Sup. 130, 558, A.2d 1042 (1987), affirmed 18 Conn. App. 313, 557 A.2d 933 (1987). In Mead, the court said that a CUTPA claim must be based on acts that have occurred "with such frequency as to indicate a general business practice." Id. at 666. In Quimby, the appellate court made specific reference to the fact that there was no allegation that defendant had acted similarly with other
claimants, in order to establish a general business practice, as the reason for the claim's failure under CUTPA.Id. at 672. Thus it is clear that the "unfair or deceptive CT Page 11589 acts or practices" outlined in the Act means acts occurring over the course of several different transactions so as to establish a pattern of doing business.
The single event involved in this case does not constitute sufficient trade practices under CUTPA. Plaintiffs are not in the business of selling homes or making loans. They were merely disposing of the home of Mr. Acker's late mother. Moreover, defendants have not alleged any facts that show an unfair business practice on the plaintiffs' part that is general in nature or that goes beyond the scope of plaintiffs' dealings with defendants. Therefore, as a matter of law the defendants have not alleged sufficient facts to establish a claim under CUTPA.
Therefore, judgment may enter for the plaintiffs on the first special defense and on the second special defense of the defendants.
Judgment may also enter for the plaintiffs on both the first and second counterclaims of the defendants.
Default was entered against the defendants for failure to pay principal, interest, taxes, homeowners/mortgage insurance and costs of collection.
Judgment of strict foreclosure may enter for the plaintiffs.
Robert J. Kennedy, Jr., a licensed certified appraiser, testified that the fair market value of subject property was $146,000. The court accepts this figure.
The court approves Mr. Kennedy's appraisal fee of $600.00.
It will be necessary for plaintiffs' counsel to recompute the debt owed by the defendants in order to give the defendants credit for the $50,000 paid to the plaintiffs by the Hallenbecks on April 27, 1995 and submit the new figure for approval.
Plaintiffs' counsel should also submit for the court's approval his fee for services and also a fee for a title search. CT Page 11590
A hearing should also be held to determine the law date.
Harold M. Missal State Trial Referee