**Philip F. PIERCE, and Sharon C. Pierce, Plaintiffs,**

v.

**EMIGRANT MORTGAGE CO., Emigrant Savings Bank, and Retained Realty, Inc., Defendants.**

**Civil Action No. 3:04–cv–1767 (JCH).**

United States District Court,
D. Connecticut.

Nov. 29, 2006.

Stephen James Curley, Law Offices of Stephen J. Curley, Stamford, CT, for Plaintiffs.

Jeffrey M. Knickerbocker, Leslee B. Hill, Robert A. Ziegler, Law Office of Robert A. Ziegler, Plainville, CT, for Defendants.

## RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. NO. 53]

HALL, District Judge.

The plaintiffs, Philip F. Pierce and Sharon C. Pierce (collectively, the "Pierces"),

who are residents of Connecticut, bring this action for declaratory relief, breach of contract, unjust enrichment, civil conspiracy, and a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen.Stat. § 42–110 *et seq.*, against the defendants, Emigrant Mortgage Company, Inc. ("Emigrant Mortgage"), Emigrant Savings Bank, and Retained Realty, Inc., all of which are corporations with their principal places of business in New York. The suit arises out of the terms of a loan agreement that the plaintiffs had entered into with Emigrant Mortgage. The defendants removed this action from the Connecticut Superior Court for the Judicial District of Stamford, pursuant to 28 U.S.C. §§ 1441 and 1446. Jurisdiction is based on the diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332.

The Pierces' claims are predicated on the assertion that the terms of the loan were unconscionable. The defendants move for summary judgment on the plaintiffs' claims in their entirety under Fed. R.Civ.P. Rule 56, arguing that the loan agreement is not unconscionable or unreasonable. On the basis of the following analysis, the defendants' motion is GRANTED in part and DENIED in part.

## I. STANDARD OF REVIEW

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir.2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts

showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Graham*, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir.2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

## II. FACTS[1]

In December 1998, the plaintiffs entered into a loan agreement with Emigrant Mortgage in the principal amount of $650,000 at a variable rate of interest. The initial interest rate was 6.5%, which was subject to change yearly on the basis of a formula set forth in a promissory note executed by the Pierces. The loan was secured by a mortgage owned alone by Sharon Pierce on the plaintiffs' residence in Greenwich, Connecticut.

The Pierces' loan was promulgated under Emigrant Mortgage's "High Equity Plus" program. This program contains relaxed income verification requirements, whereby Emigrant Mortgage calculated contract interest rates based upon such

---

1. For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the Pierces where they provide evidence to support their allegations.

factors as the loan to collateral value ration and the applicant's credit history. Incorporated into the loan agreement was a rider providing that, in the case of default, the interest rate on the loan would be increased to 18%. The loan agreement also provides that the lender may accelerate the loan in the event of default, impose a five percent late fee, and collect other charges related to the default.

On or about December 29, 1998, the note was executed on the Pierces' behalf by their attorney Frank J. Gilbride, II, who acted as their attorney-in-fact. The Pierces granted Attorney Gilbride powers of attorney so that he could close the loan while the Pierces were away on vacation. At the closing, Gilbride executed a number of documents on behalf of the Pierces in addition to the note. Most notable among these documents was a Commitment Letter, dated December 29, 1998, which specified that the Gilbride's law firm had been designated solely to represent Emigrant Mortgage. Ex. K to Memo in Support at ¶ 22. The Pierces claim that they were not aware of this provision prior to conferring powers of attorney to Gilbride.

Also included in the Commitment Letter were the terms of the default interest rate required by the note under Emigrant Mortgage's High Equity Plus program. Though the Pierces had previously filled out an application form for the High Equity Plus loan, that document did not mention the details of the default interest rate provisions. Thus, the Commitment Letter represents the first documentation that mentioned the default interest rates associated with the Pierces' note. The Pierces do not contest, however, that they did not read the loan application, the Commitment Letter, or any of the other documents signed in connection with their loan. Nor do the Pierces contest that they did not ask any questions of their lawyer or any-

one else concerning the terms of these documents. Subsequent to the parties closing on the note in issue, Emigrant Mortgage assigned the loan and the mortgage to Emigrant Savings Bank, who then assigned the loan and mortgage to Retained Realty.

At some point in 1999 or 2000, the plaintiffs were no longer able to make their regular monthly loan payment as required by the loan agreement. By letter in July 2000, Emigrant Mortgage, on behalf of Emigrant Savings, notified the plaintiffs that their loan was in default and was therefore accruing interest at the 18% default interest rate. The letter also indicated that, if the plaintiffs failed to cure the default by August 16, 2000, the loan would be accelerated and become due in its entirety. When the Pierces did not cure the default, Emigrant Savings, which held the note at this time, accelerated the Pierces' debt and charged the Pierces a monthly late fee of five percent on the loan.

Emigrant Mortgage, which serviced the loan on behalf of Emigrant Savings, then informed the Pierces that foreclosure proceedings were being brought against them. Emigrant Mortgage also instructed the Pierces to deal exclusively with Emigrant Mortgage's attorney, Daniel S. Nagel, with regards to foreclosure. In 2000 and 2001, Mr. Pierce contacted Attorney Nagel in an attempt to defer the default interest. Emigrant Mortgage had approved such a waiver of the Pierces' default interest in the past. Attorney Nagel explicitly rejected Mr. Pierce's first settlement offer, and never responded to subsequent attempts by Mr. Pierce to resolve the issue.

Instead, Emigrant Mortgage brought a state court action to collect on the loan agreement and foreclose on the mortgage in August 2003. Emigrant Savings subsequently assigned the loan and mortgage to Retained Realty. While the state court

action was pending, Sharon Pierce sold the Greenwich property. In a November 2003 letter, Retained Realty demanded payment of $1,053,570.73 before it discharged the loan in full and withdrew the 2003 action. The Pierces paid this sum to Retained Realty but retained, by letter accompanying this settlement amount, their right to pursue any legal remedy they may have.

The plaintiffs brought the present action, seeking a declaration that the loan was void *ab initio* because it was unconscionable and violative of Conn. Gen.Stat. § 37–4. In its September 29 Ruling, the court ruled that the loan was not usurous under Conn. Gen.Stat. § 37–4. (Doc. No. 32.) The complaint also asserts, on behalf of Philip Pierce alone, claims for breach of contract, breach of implied contract, unjust enrichment, breach of the duty of good faith and fair dealing, a violation of CUTPA, and civil conspiracy. The defendants move pursuant to Fed.R.Civ.P. 56 for summary judgment on the plaintiffs' claims.

## III. DISCUSSION

### A. Unconscionability

#### 1. *The Doctrine of Unconscionability*

■ The basis test for determining whether the terms of a real estate note or mortgage are unconscionable under Connecticut law, is "whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Hamm v. Taylor,* 180 Conn. 491, 495–96, 429 A.2d 946 (1980) (citing Official Comment 1 to § 2–302 of the Uniform Commercial Code). As *Hamm* suggests, determining whether a particular agreement is unconscionable requires a fact-intensive examination of the agreement at issue. *See Monetary*

*Funding Group, Inc. v. Pluchino,* 87 Conn.App. 401, 411–412, 867 A.2d 841 (Conn.App.2005) (quoting *Family Financial Services, Inc. v. Spencer,* 41 Conn. App. 754, 762–63, 677 A.2d 479 (1996)); *see also Cheshire Mortgage Service, Inc. v. Montes,* 223 Conn. 80, 87–89, 612 A.2d 1130 (1992). Ultimately, however, the issue of unconscionability is a question of law to be decided by the court. *Iamartino v. Avallone,* 2 Conn.App. 119, 125, 477 A.2d 124 (1984).

■ At its core, the doctrine of unconscionability protects parties to a contract from oppression and unfair surprise. *Cheshire Mortgage,* 223 Conn. at 88, 612 A.2d 1130. Connecticut law reflects these two concerns by dividing the unconscionability inquiry into a substantive and a procedural component. "Substantive unconscionability focuses on the 'content of the contract' as distinguished from procedural unconscionability, which focuses on the 'process by which the allegedly offensive terms found their way into the agreement.'" *Id.* at 87 n. 14, 612 A.2d 1130 (quoting J. Calamari & J. Perillo, Contracts (3d Ed.) § 9–37). Factors the court may consider in resolving whether a certain interest rate is unconscionable include, but are not limited to, "[t]he financial circumstances of the borrower, the increased risk associated with a second mortgage, and the income-producing capacity of the mortgaged property." *Hamm,* 180 Conn. at 495, 429 A.2d 946.

#### 2. *Application*

In asserting that the note and mortgage at issue in this case are not unconscionable as a matter of law, the defendants rely upon a number of facts and inferences which, in their view, preclude a finding of either procedural or substantive unconscionability.

As to procedural unconscionability, the defendants note, among other things, that the Pierces were represented by counsel at the closing of the loan, that they never inquired into the terms of the loan, that they entered into the agreement voluntarily, and that they only became subject to the default interest rate by virtue of not paying the note in a timely fashion.

■ The court finds that, despite the defendants' arguments, the Pierces have adduced enough evidence to create a material issue of fact on whether the note and mortgage were procedurally unconscionable. Perhaps most compelling is the fact that Attorney Gilbride, to whom the Pierces entrusted with powers of attorney for the purposes of closing the loan in question, worked for a firm that solely represented Emigrant Mortgage. What role Attorney Gilbride's obvious conflict of interest played in the closing, and, consequently, the legal question of procedural unconscionability, are issues the court cannot resolve on the record before it.

In arguing that the Pierces cannot establish that substantive unconscionability, the defendants go to great lengths to justify the logic and fairness of the default interest rate. The defendants, for example, point out that an 18 percent default interest rate has been upheld in Connecticut the context of unpaid municipal taxes. *See T & M Building Co., Inc. v. Gonsalves,* 2003 WL 462403 (Conn.Super.2003). They also cite the fact that higher interest rates have been deemed not unconscionable in commercial real estate, *see Iamarti-*

*no v. Avallone,* 2 Conn.App. 119, 477 A.2d 124 (1984), and that the loan in question is not a "high cost home loan" within the meaning of Conn. Gen.Stat. § 36a–746a(4).

None of the arguments advanced by the defendants, either individually or collectively, is dispositive on the question of whether the default interest rate constitutes an overly oppressive contract term. Given the terms of the default interest rate, which include, along with an 18 percent default interest rate, terms allowing for the acceleration of a loan initially worth $650, 000 and the imposition of a 5 percent late fee, the court finds that it cannot resolve at this stage whether the note was "so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Cheshire Mortgage,* 223 Conn. at 89, 612 A.2d 1130.[2]

## B. The Pierces' Reservation of their Specific Claims

■ The defendants claim that the Pierces have waived, abandoned, or forfeited all of the claims set forth in the Complaint by virtue of failing to either raise unconscionability during the foreclosure action or properly reserve their claims upon paying off the note. The court finds no legal basis for the defendants' contention. Further, the court finds that the language of the Pierces' waiver, which reserved their rights to pursue damages for the defendants' "usurious and unfair trade practice," (Ex. AC to Def. Memo in Support), is broad enough to encompass the Pierces' unconscionability claim. The

**2.** Because the court holds that there is a material issue of fact as to whether the note and mortgage at issue were unconscionable, the court does not address the defendants' alternative argument that, under the law in states such as New Jersey and Indiana, the contract terms were reasonable. *See generally MetLife Capital Financial Corp. v. Washington Assocs., LP.,* 159 N.J. 484, 732 A.2d 493 (1999) and

*Art Country Squire, L.L.C. v. Inland Mortgage Corp.,* 745 N.E.2d 885 (Ind.Ct.App.2001). The court agrees with the defendants that the unreasonableness standard does not apply in this matter, as the Pierces have not alleged contractual unreasonableness as a basis of recovery. In any event, the parties agree that Connecticut law, which applies the unconscionability standard, governs this case.

court therefore rejects the defendants' waiver argument.

### C. The Pierces' Specific Claims

The defendants' challenges to Counts One (request for declaratory judgment), Two (breach of contract), Three (breach of implied contract), Four [3] (unjust enrichment), Five (breach of implied duty of good faith and fair dealing), and Six (violations of the Connecticut Fair Trade Practices Act) are all dependent upon their contentions with respect to unconscionability and waiver.[4] *See* Memo in Support at 28–40. As the court has found that there are material issues of fact as to whether the note and mortgage were unconscionable, and rejected the assertion that the Pierces waived their specific claims, the court denies the defendants' Motion for Summary Judgment as to these counts.

■ Mr. Pierce's final cause of action in Count Seven asserts a claim for civil conspiracy against the defendants. "The [elements] of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Harp v. King*, 266 Conn. 747, 779, 835 A.2d 953 (2003)(quotations omitted.). "[T]here is no independent claim of civil conspiracy. Rather, [t]he action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. Thus, to state a cause of action, a claim of civil conspiracy

must be joined with an allegation of a substantive tort." *Larobina v. McDonald*, 274 Conn. 394, 408, 876 A.2d 522 (Conn. 2005).

In the Complaint, the Pierces asserts that the defendants "agreed to engage in the making, maintenance, and collection of the Note to Mr. Pierce upon unconscionable terms pursuant to a scheme and in furtherance of the object of engaging in an unfair trade practice prohibited by Conn. Gen.Stat. § 42–110a." Compl. at ¶ 27. They also allege that the Emigrant Mortgage and Emigrant Savings assigned the note to Retained Realty in order to insulate Emigrant Mortgage and Emigrant from liability. Compl. at ¶ 28.

■ Outside of these bare allegations, the Pierces have not come forward with a single fact or citation supporting a scheme among the defendants either to engage in an unfair trade practice or to insulate Emigrant Mortgage and Emigrant Savings from liability. In fact, the Pierces never specifically address their conspiracy claim in the Opposition. Such silence cannot defeat a Motion for Summary Judgment. The court therefore grants the Motion for Summary Judgment as to the Pierces' conspiracy claim in Count Seven.

### IV. Conclusion

For the foregoing reasons, defendants Emigrant Mortgage Company, Inc., Emigrant Savings Bank, and Retained Realty, Inc.'s Motion for Summary Judgment [Doc. No. 53] is hereby GRANTED in part and DENIED in part. It is GRANTED

---

**3.** The defendants claim that, because Mrs. Pierce paid off the defaulted loan, Mr. Pierce's claim for unjust enrichment in Count Four necessarily fails. As the defendants cite no authority for this proposition the court rejects this assertion.

**4.** The court set out the law relevant to all these counts in its previous Ruling (Doc. No. 32) on the defendants' Motion to Dismiss.

with respect to Count Seven. It is DE-NIED on all other counts.

**SO ORDERED.**